# SEARS, ROEBUCK AND COMPANY *v.* BOARD OF TAX REVIEW OF THE TOWN OF WEST HARTFORD
## (SC 15492)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

Argued April 22—officially released July 22, 1997

*Marjorie Wilder*, corporation counsel, for the appellant (defendant).

*I. Milton Widem*, for the appellee (plaintiff).

*Opinion*

PETERS, J. The principal issue in this tax appeal is the extent of a trial court's discretion, under General Statutes § 12-117a,[1] to award prejudgment interest to an aggrieved taxpayer upon finding that a municipality

---

[1] At the time the plaintiff filed this action, the provisions that constitute General Statutes § 12-117a were codified at General Statutes (Rev. to 1989) § 12-118. That section provided in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated . . . . [T]he pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

has overassessed the value of the taxpayer's real property. The plaintiff, Sears, Roebuck and Company, appealed to the trial court from the refusal of the defendant, the board of tax review of the town of West Hartford (board),[2] to reduce the assessed value of the plaintiff's property. The trial court determined that the property in question had been overassessed and, in a subsequent decision, awarded the plaintiff interest on its tax overpayment. The town of West Hartford (town) appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm in part and reverse in part.

The relevant facts are undisputed. The plaintiff owns property in the town consisting of a thirteen acre parcel of land improved with two buildings, an automobile service center and a department store. As a result of the town's decennial revaluation of real property; see General Statutes § 12-62 (a); the town assessor (assessor) determined that, as of the assessment year commencing October 1, 1989, the true and actual value of the plaintiff's property was $13,045,000 and assessed the property at 70 percent of this value. See General Statutes § 12-62a (b) (municipality shall assess all property at "seventy per cent of present true and actual value"). Disputing the valuation, the plaintiff appealed to the board seeking a reduction in the property assessment. See General Statutes § 12-111 (providing for appeal to board). After the board declined to alter the assessment, the plaintiff appealed from the board's decision to the trial court. See General Statutes § 12-117a. While this matter was on appeal in the trial court,

---

[2] Although the board is the named defendant, the town of West Hartford has prosecuted this appeal and, as the entity responsible for reimbursing the plaintiff for tax overpayment and any interest thereon, is the real party in interest.

the town continued to assess the plaintiff's property at its 1989 valuation, and the plaintiff amended its appeal to include the assessment years 1990 through 1995.[3] See General Statutes § 12-177a.

The only substantive issue on which the trial court heard evidence in the de novo proceedings pursuant to § 12-117a was whether the 1989 assessment was excessive.[4] The principal witness for the plaintiff was William Kane, a professional appraiser who had conducted an appraisal of the plaintiff's property. Kane testified that, based on the capitalization approach to property valuation,[5] the fair market value of the plaintiff's property, in 1989, was $11,700,000.[6] The principal witness for the town was William French, also a professional appraiser. French testified that he had performed two valuation studies of the plaintiff's property, one using the cost

[3] While this matter was on appeal in the trial court, the plaintiff continued to pay 100 percent of its taxes in accordance with the 1989 assessment, despite the fact that, under § 12-117a, it could have withheld up to 10 percent of its tax obligation during the pendency of the assessment appeal. See footnote 1 of this opinion. The plaintiff, moreover, frequently paid this full amount in advance of the tax due dates.

[4] The plaintiff originally alleged that the assessment was "grossly excessive, disproportionate and unlawful." In response to this court's opinion in *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 626 A.2d 1292 (1993), the plaintiff sought and was granted leave to amend its allegations to state that the assessment was only "excessive or illegal."

[5] The "capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value." (Internal quotation marks omitted.) *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 739, 651 A.2d 1279 (1995).

[6] Following Kane's testimony and after the plaintiff had rested, the town moved for judgment, contending that, due to oversights in Kane's appraisal report and trial testimony, the plaintiff had failed to establish that the assessment was excessive. The trial court denied this motion, stating that the evidence, if viewed "in the light most favorable to the plaintiff, [was] certainly enough to go to the trier of fact." For purposes of procedural clarification, we construe this motion for judgment as a motion for dismissal under § 302 of the rules of practice.

approach to property valuation[7] and the other using the capitalization approach advocated by the plaintiff. He testified that, in 1989, the property had a fair market value of $12,346,000 under the cost approach and $12,106,000 under the capitalization approach. No one associated with the 1989 reassessment testified at trial, and the town submitted no evidence that would support its original $13,045,000 valuation of the plaintiff's property.

In an October 18, 1995 memorandum of decision (October, 1995 decision), the trial court determined that "the plaintiff [had] met its burden [of proving] that the assessor's [$13,045,000] valuation was not the true and accurate value of the property." The court found that the capitalization approach advocated by the plaintiff was the more appropriate method of valuation under the circumstances of this case. It also found, however, that Kane's appraisal suffered from a "number of factual inaccuracies"[8] that rendered Kane a less "careful, thorough and credible" witness than French and undermined the court's confidence in his testimony. Accordingly, the court concluded that the fair market value of the property was $12,106,000, the valuation reached by French using the capitalization approach.

Thereafter, the plaintiff filed a motion with the trial court pursuant to § 12-117a, seeking, as a remedial matter, to recover prejudgment interest on the taxes overpaid between 1989 and 1995 as a result of the

[7] "The cost approach estimates the cost to reproduce the building as it exists, minus applicable depreciation, plus the value of the land." *New Haven Savings Bank* v. *West Haven Sound Development*, 190 Conn. 60, 65 n.8, 459 Conn. 999 (1983).

[8] These inaccuracies flowed primarily from Kane's decision to omit from his appraisal report approximately 8000 square feet of floor space located on the third floor of the plaintiff's department store. Kane reasoned that, because this floor space contained only mechanical equipment and did not contribute directly to the plaintiff's income, it did not factor into a valuation based on the capitalization approach. The trial court rejected this reasoning.

overassessment. A hearing was held in March, 1996, at which time both parties presented evidence regarding the plaintiff's right to interest and the applicable interest rate.[9] In an April 9, 1996 memorandum of decision (April, 1996 decision), the trial court opened its judgment and granted the plaintiff the relief it had requested. The court concluded that, as an aggrieved taxpayer, the plaintiff had a mandatory right to prejudgment interest under § 12-117a and that, under General Statutes § 37-3a,[10] the rate of such interest was mandatorily fixed at 10 percent. After permitting the parties to submit proposed calculations consistent with this decision, the trial court awarded the plaintiff $27,795.77 in interest on its tax overpayment.

On appeal, the town challenges both the trial court's October, 1995 decision substantively reducing the assessment and its April, 1996 decision awarding prejudgment interest to the plaintiff. With respect to the October, 1995 decision, the town claims that the assessment reduction was improper because the plaintiff failed to satisfy its burden of proving overvaluation. With respect to the April, 1996 decision, the town claims that, in awarding mandatory interest at 10 percent, the trial court failed to exercise proper discretion under § 12-117a. We disagree with the town's first claim but agree with its second claim. We will address each claim in turn.

I

The parties do not dispute the principles that govern a trial court's decision whether to reduce a property

[9] The plaintiff's evidence tended to show that interest was available at a rate of 9.35 percent during the period of overassessment. The town presented evidence placing that figure at 5.15 percent.

[10] General Statutes § 37-3a provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at a rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned

valuation. "Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . Mere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation." (Citations omitted; internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 103–104, 626 A.2d 1292 (1993). The trial court tries a § 12-117a appeal de novo. Id., 104; see also *Xerox Corp.* v. *Board of Tax Review*, 240 Conn. 192, 204, 690 A.2d 389 (1997); *New Haven Water Co.* v. *Board of Tax Review*, 166 Conn. 232, 234, 348 A.2d 641 (1974). Although the ultimate question at this de novo proceeding "is the ascertainment of the true and actual value of the taxpayer's property"; (internal quotation marks omitted) *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 104; the taxpayer bears the burden of establishing the impropriety of the assessor's valuation. *Xerox Corp.* v. *Board of Tax Review*, supra, 204.

In this case, the town urges us to conclude that, as a matter of law, the plaintiff failed to meet its burden. The town contends that, because the trial court did not credit Kane's testimony and because Kane was the plaintiff's principal witness, the plaintiff "utterly failed" to present evidence establishing an overassessment. Although the town concedes that the testimony of its own expert, French, supported the valuation reached by the trial court, it contends that the court should not have considered French's testimony once the court had rejected Kane's testimony. We are unpersuaded.

Because a tax appeal is heard de novo, a trial court judge "is privileged to adopt whatever testimony he

at a greater rate, as damages for the detention of money after it becomes payable. . . ."

reasonably believes to be credible." (Internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 99; cf. *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 452, 582 A.2d 182 (1990) (in deficiency judgment hearing, trier of fact "is privileged to adopt whatever testimony he reasonably believes to be credible" [internal quotation marks omitted]). This principle applies not only to the trial court's determination of the true and actual value of taxable property, but also to its determination of whether the plaintiff has satisfied the burden of establishing overvaluation. See *Midway Green Corp.* v. *Board of Tax Review*, 8 Conn. App. 440, 442, 512 A.2d 984 (1986) ("[t]he ultimate decision for the court is whether, *considering all* of *the evidence . . .* the plaintiff has proved by a fair preponderance of the evidence that any of the assessments on its property were illegal or excessive" [emphasis added]).

The fact that, in this case, the testimony that the trial court found credible was presented by the town's *own* expert does not undermine the applicability of this principle. Because the burden of proving overvaluation rested on the plaintiff, the town was under no obligation to submit expert evidence in support of its valuation. Having submitted such evidence, however, the town cannot circumscribe its significance or prevent the trial court from *relying* on it for substantive purposes. See *CTB Ventures 55, Inc.* v. *Rubenstein*, 39 Conn. App. 684, 692–94, 667 A.2d 1272 (1995), cert. denied, 235 Conn. 940, 669 A.2d 577 (1996) (in deficiency judgment hearing, trial court may rely on defendant's expert in finding that plaintiff has satisfied burden of proof).

The propriety of the trial court's reliance on the town's expert witness finds support in the "waiver rule." Under this rule, when a trial court denies a defendant's motion for a directed verdict at the close of the plaintiff's case, the defendant, by opting to introduce evi-

dence in his or her own behalf, waives the right to appeal the trial court's ruling. See *Dindo* v. *Grand Union Co.*, 331 F.2d 138, 141 (2d Cir. 1964); *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984). The rationale for this rule is that, by introducing evidence, the defendant undertakes a "risk that the testimony of defense witnesses will fill an evidentiary gap in the [plaintiff's] case." *State* v. *Rutan*, supra, 440. On appeal in such cases, the "question becomes whether . . . there is evidence in *the entire record*" to justify submitting the matter to a trier of fact. (Emphasis added.) *Warner* v. *Kewanee Machinery & Conveyor Co.*, 411 F.2d 1060, 1063 (6th Cir. 1969), cert. denied, 398 U.S. 906, 90 S. Ct. 1685, 26 L. Ed. 2d 65 (1970); see also 9 J. Wigmore, Evidence (4th Ed. 1981) § 2496, pp. 402–403. Although we have questioned the continuing viability of the waiver rule in the criminal context; see *State* v. *Rutan*, supra, 441; we have never questioned its applicability in the civil context. Id. The town has articulated no persuasive reason why the rationale underlying the waiver rule should not operate in a tax appeal to allow a trial court to render judgment for a taxpayer on the basis of the testimony of the town's own, admittedly sufficient, expert evidence.[11]

[11] The town erroneously assumes that, by upholding the trial court's assessment reduction, we are inviting taxpayers "to appeal assessments, offer some scintilla of evidence, no matter how lacking, that the town's valuation may be high, and [thereby] require a town to devote resources to justify its [assessment]." There are three flaws in this argument. First, as a factual matter, the plaintiff in this case offered much more than a "scintilla of evidence" supporting overvaluation. The plaintiff's expert, Kane, was a qualified professional appraiser who had conducted a detailed study on the value of the plaintiff's property. That the trial court ultimately rejected Kane's appraisal after weighing and considering all of the evidence does not render his testimony entirely lacking. Second, as a legal matter, a town is never "require[d] . . . to devote resources to justify" the accuracy of its assessment. The burden of proof remains on the taxpayer throughout the proceeding, and the town may, at its discretion, rest its case without submitting countervailing evidence. Finally, as a practical matter, if a taxpayer has offered patently insufficient evidence tending to show overvaluation, a town may conserve its resources by moving for dismissal under § 302 of the rules

Accordingly, we conclude, in light of the record at the trial as a whole, that the plaintiff satisfied its burden of establishing an overassessment. The town cannot succeed in its appeal from the trial court's judgment rendered in conformance with the court's October 18, 1995 memorandum of decision.

II

We next consider the town's claim that the trial court improperly awarded prejudgment interest to the plaintiff. The trial court based the interest award on two underlying determinations: (1) that § 12-117a creates a mandatory right to prejudgment interest once a taxpayer establishes that his property has been overassessed; and (2) that § 37-3a fixes that rate of interest at 10 percent. The town takes issue with both of these determinations, claiming that neither the *award* of interest nor the *rate* at which such interest should be calculated is statutorily mandated. We agree with the town.

A

In determining whether the award of interest under § 12-117a is mandatory or discretionary, we are guided by settled principles of statutory construction. "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relation-

of practice at the close of the plaintiff's case. In this case, the town's motion for dismissal was denied; see footnote 6 of this opinion; prompting it to proceed with its own case and to call French to testify. In so doing, the town concedes that it took a calculated risk that French's testimony would undermine, rather than support, the 1989 assessment. See *State* v. *Rutan*, supra, 194 Conn. 440. Contrary to the town's position, this risk, inherent in all civil litigation, does not serve to shift the burden of proof from the taxpayer to the town.

ship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994).

At the time the plaintiff filed its action in this case, § 12-117a[12] provided in relevant part that "[t]he court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . and, upon all . . . applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the [taxpayer] shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the [taxpayer's] option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such [taxpayer] and against such city or town for the whole amount of such overpayment, together with interest and costs."[13]

[12] At the time, § 12-117a was codified at § 12-118. See footnote 1 of this opinion.

[13] In 1996, the legislature amended the relevant portion of § 12-117a to provide that, as of the assessment year commencing October 1, 1995, an aggrieved taxpayer "shall be reimbursed by the town or city for any overpayment of taxes, together with interest and ANY costs AWARDED BY THE COURT, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and ANY costs AWARDED BY THE COURT. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and ANY costs AWARDED BY THE COURT." Public Acts 1996, No. 96-1, § 3. Neither party has suggested that these amendments have any bearing on the present appeal or on a taxpayer's right to interest arising out of overassessments in years prior to the applicable date of the act. We have discovered no legislative history indicative of a legislative purpose that these amendments were to have a clarifying or retroactive effect. For these reasons we decline to consider the applicability of Public Acts 1996, No. 96-1, § 3, to this appeal and express no opinion on the significance of this amendment in any future appeal arising under § 12-117a.

In its April, 1996 decision, the trial court construed this language to provide a mandatory right to prejudgment interest. The court acknowledged that "[t]he award of prejudgment interest has traditionally been considered as a discretionary judicial function," but inferred from use of the word "shall" a legislative intent that the interest provisions of § 12-117a fall outside this traditional function. We do not agree with the trial court.

We begin by recognizing that, as used in § 12-117a, the term "shall" does not carry a fixed connotation. Under the statute, "shall" applies to three forms of relief: reimbursement, interest and costs. See General Statutes § 12-117a (aggrieved taxpayer "shall be reimbursed . . . together with interest and costs"). There is no dispute that the trial court is required to order a municipality to reimburse an aggrieved taxpayer for overpayments resulting from overassessment. Thus, with respect to reimbursement, the term "shall" carries a mandatory connotation. There is also no dispute, however, that a trial court *is not* statutorily required to award costs to an aggrieved taxpayer. See General Statutes § 12-117a ("costs may be taxed at the discretion of the court"). Thus, with respect to costs, the term "shall" does not carry a mandatory connotation. The question presented in this case is whether the term "shall," as it applies to *interest,* carries the mandatory connotation associated with reimbursement or the directory connotation associated with costs.

In answering this question, we are guided by past cases construing the legislature's use of the term "shall." "In determining whether the use of the word 'shall' is mandatory or directory, the test is whether the prescribed mode of action is of the essence of the thing to be accomplished. . . . That test must be applied with reference to the purpose of the statute." (Citations omitted; internal quotation marks omitted.) *Eichman*

v. *J & J Building Co.*, supra, 216 Conn. 450; see also *LeConche* v. *Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990). Contrary to the trial court's opinion, we do not agree that the allowance of interest is the "essence of the thing to be accomplished" by § 12-117a. The primary purpose of that statute is to afford an aggrieved taxpayer a forum for challenging and, if appropriate, correcting a property assessment. See *Pauker* v. *Roig*, 232 Conn. 335, 340, 654 A.2d 1233 (1995) (§ 12-117a "allows a taxpayer to challenge the assessor's valuation of his property"). The right to interest, like the right to costs, is ancillary to this primary purpose. Although the statutory predecessor to § 12-117a was first enacted in 1878; Public Acts 1878, c. 32, § 1; the legislature did not adopt the interest provisions until 1933. Public Acts 1933, c. 217, § 1. We decline to hold that the allowance of interest is the "essence of the thing to be accomplished" by § 12-117a when the statute did not explicitly provide for this form of relief until over fifty years after its enactment.

Our conclusion that the use of the term "shall" was intended to be directory is supported by a contextual reading of § 12-117a. Immediately precedent to the language concerning interest, § 12-117a provides that "[t]he court shall have power to grant such relief as *to justice and equity appertains*, upon such terms and in such manner and form as appear equitable . . . ." (Emphasis added.) The trial court did not address this language in its memorandum of decision. We deem it inappropriate, however, to interpret the interest provision in § 12-117a without also considering the discretionary language to which that provision is adjoined. "[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one [part] to be construed." (Internal quotation marks omitted.) *State*

v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).

Interpreting the interest provision of § 12-117a as discretionary also harmonizes the right to interest under § 12-117a with the right to interest under General Statutes § 12-119. Section 12-119 provides in relevant part that a taxpayer may obtain judicial relief where its property assessment was "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . ." As a substantive matter, therefore, the taxpayer bears a heavier burden under § 12-119 than under § 12-117a and must establish something more egregious than mere overvaluation in order to prevail under § 12-119. See *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 340, 597 A.2d 326 (1991) (under § 12-119, taxpayer must prove either absolute nontaxability of property or manifest and flagrant disregard of statutes). Despite this demanding substantive requirement, we have construed § 12-119 to afford only a discretionary, rather than mandatory, right to interest. See *Loomis Institute* v. *Windsor*, 234 Conn. 169, 181–82, 661 A.2d 1001 (1995). It would be inconsistent for the legislature to have provided a more limited, discretionary, right to interest for a taxpayer who establishes a greater injury under § 12-119 than for a taxpayer who demonstrates a lesser injury under § 12-117a. In concluding that § 12-117a does not entitle a taxpayer to interest as a matter of right, we interpret the statutory language to avoid such inconsistency. See *Powers* v. *Ulichny*, 185 Conn. 145, 149, 440 A.2d 885 (1981).

Accordingly, we conclude that the trial court improperly determined that the plaintiff was afforded a nondiscretionary statutory right to interest under § 12-117a. The trial court, on remand, will have to decide, as a

matter of judicial discretion, whether to provide this form of relief to the plaintiff.[14]

## B

If, on remand, the trial court determines that a discretionary award of interest is appropriate in light of the facts of record, the trial court will have to decide what the appropriate rate of interest for any such award should be. Recognizing that § 12-117a does not supply an applicable rate, the trial court in this case relied on § 37-3a and concluded that, under that statute, the legislature has fixed the rate of prejudgment interest at 10 percent. The town disagrees and contends that § 37-3a sets only a maximum interest rate and that a trial court may exercise its equitable powers under § 12-117a to award interest at any level up to this maximum. We agree with the town.

As a preliminary matter, we recognize that the trial court relied on § 37-3a without addressing the procedural requirements of that statute. Section 37-3a provides in relevant part that prejudgment interest "may be recovered and allowed in civil actions . . . *as damages for the detention of money after it becomes payable.*" (Emphasis added.) We have construed this statute to give rise to two procedural requirements, pursuant to which a trial court must determine: "(1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 735, 687 A.2d

---

[14] Contrary to the town's position, the fact that the plaintiff tendered its tax payments prior to their due dates or paid 100 percent of its assessment when it was not required to do so; see footnote 3 of this opinion; does not automatically preclude the plaintiff from receiving interest. In exercising its authority to award interest, the trial court may take into account these and all other circumstances related to the plaintiff's tax payments.

506 (1997); see also *Metcalfe* v. *Talarski*, 213 Conn. 145, 160, 567 A.2d 1148 (1989). As the town points out, because the plaintiff *voluntarily* paid more in taxes than was required under § 12-117a; see footnote 3 of this opinion; it may be problematic either to hold that the town "wrongfully detained" the plaintiff's money or to attempt to ascertain exactly when this "wrongful detention began."

That this action does not fit squarely within the parameters of § 37-3a, however, neither renders interest unavailable under § 12-117a nor renders § 37-3a irrelevant to the present dispute. The plaintiff's right to interest derives from the text of § 12-117a and, to the extent that the interest provisions of that statute are self-activating, a trial court may award prejudgment interest without finding that the procedural requirements of another interest statute, including § 37-3a, have been satisfied.[15] A trial court, however, should not ignore the text of § 37-3a when awarding interest under § 12-117a. To the extent that § 37-3a reflects a legislative determination that the rate of prejudgment interest must fall within certain limits, a trial court awarding prejudgment interest under § 12-117a should look to § 37-3a for guidance in setting an appropriate rate. We turn, therefore, to determining what guidance properly can be derived from § 37-3a.

Section 37-3a provides in relevant part that "interest at a rate of ten per cent, *and no more*, may be recovered and allowed in civil actions . . . ." (Emphasis added.) Although the trial court recognized that the phrase "and no more" suggests a rate ceiling, it concluded, primarily on the basis of legislative history, that this figure actu-

---

[15] It is useful in this regard to contrast the right to interest under § 12-119. Because that statute gives the trial court no explicit textual authority to award interest, an aggrieved taxpayer may seek interest under the provisions of another statute. See *Loomis Institute* v. *Windsor*, supra, 234 Conn. 181–82 (taxpayer invoked § 37-3a).

ally represents an absolute amount and is, therefore, not subject to downward variation. The court reasoned that if the legislature had actually intended to set a rate ceiling, § 37-3a would provide for "interest at a rate of no more than ten per cent a year" and that, in the absence of this or similar syntax, the legislature probably included the phrase "and no more" only "out of abundant caution." We disagree with this analysis.

"It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Citations omitted; internal quotation marks omitted.) *Castagno* v. *Wholean*, 239 Conn. 336, 346, 684 A.2d 1181 (1996). The trial court's interpretation of § 37-3a fails to accord proper weight to these principles. It is true that the language now codified at § 37-3a has undergone numerous revisions and that, at an earlier point, this language arguably was phrased in more emphatic terms. See Public Acts 1873, c. 87, § 2 ("no greater rate of interest than seven per cent. per annum shall be recovered or allowed"). Over the course of these revisions, however, the legislature has seen fit neither to delete "and no more" nor to include language barring the judiciary from awarding interest below the stated rate. Under these circumstances, we decline to negate, judicially, the significance of the phrase "and no more" by holding that § 37-3a fixes the rate of prejudgment interest at 10 percent.[16] We conclude instead

[16] This holding is not inconsistent with our opinion in *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 690–93, 508 A.2d 438 (1986). The issue in *Neiditz* was whether, by increasing the rate of interest in § 37-3a from 6 to 8 percent; see Public Acts 1979, No. 79-364, § 2; the legislature had intended to effect a retroactive change in the law. The trial court in *Neiditz* had applied the interest increase to events arising before the effective date of the amendment. We concluded that this was improper. In the course of our discussion, we held that a trial court does not have "discretion with regard to the applicable rate of interest" and that "§ 37-3a presumably reflects

that, consistent with its plain language, § 37-3a establishes a maximum rate above which a trial court should not venture in the absence of specific legislative direction. See *White Oak Corp.* v. *Dept. of Transportation*, 217 Conn. 281, 297, 585 A.2d 1199 (1991) (§ 37-3a "permits recovery of interest . . . at a *maximum* rate of 10 percent" [emphasis added]).

A trial court acting pursuant to § 12-117a has broad discretion to award interest up to this maximum rate. See General Statutes § 12-117a (trial court may grant relief "upon such terms and in such manner and form as appear equitable"). In exercising this equitable authority, a trial court may consider all relevant information and should allow the parties, if appropriate, to submit evidence relative to the rate of interest available during the period of overassessment. Although the trial court in this case heard evidence from *both* parties tending to show that interest was available at a rate less than 10 percent; see footnote 9; it improperly disregarded this evidence upon concluding that the rate of interest under § 37-3a was not subject to variation.

The judgment is affirmed with respect to the reduction of the plaintiff's tax assessment. The judgment is reversed with respect to the award of prejudgment interest to the plaintiff, and the case is remanded for a determination of the amount of prejudgment interest, if any, to which the plaintiff is entitled.

In this opinion CALLAHAN, C. J., and NORCOTT, J., concurred.

---

the legislature's view of the rate of interest . . . obtainable while the money was being wrongfully withheld." *Neiditz* v. *Morton S. Fine & Associates, Inc.*, supra, 691–92. We made these statements, however, in connection with the trial court's improper decision to adopt the 1979 interest rate and thereby to award interest at a rate *greater* than that allowed in the applicable version of § 37-3a. In *Neiditz*, we had no occasion, therefore, to consider whether a trial court may award interest at a rate *less* than that specified in § 37-3a.

MCDONALD, J., with whom BERDON, J., joins, concurring and dissenting. I concur in parts I and II B of the majority opinion. I dissent as to part II A.

In part II A, the majority defines "shall" with respect to prejudgment interest payable to the taxpayer under General Statutes § 12-117a as meaning "may." "In other words, according to the majority, 'shall' means shall when the court wants it to mean shall, but 'shall' does not mean shall when the court is of another mind." *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 688, 694 A.2d 1218 (1997) (*Berdon, J.*, dissenting). Only in Wonderland does shall mean may. See id., 688 n.5.

In its holding, the majority renders the words of commandment entirely permissive. This distortion of plain language would confound philologists, should disturb the trial bench, and makes light of the authority of the General Assembly.

Accordingly, I respectfully dissent, with the hope that the majority does not read dissent as agreement.