Katherine **SHAW**, **M.D.**, **Plaintiff**,

v.

**GREENWICH ANESTHESIOLOGY ASSOCS., P.C., Defendant.**

**No. CIV. 3:99CV1076(PCD).**

United States District Court, D. Connecticut.

March 21, 2002.

---

Victoria De Toledo, Rhonna W. Rogol, Casper & de Toledo, Stamford, CT, for Katherine Shaw, plaintiff.

Sheila Huddleston, Karen T. Staib, Shipman & Goodwin, Hartford, CT, Robin G. Frederick, Shipman & Goodwin, Stamford, CT, Scott R. Lucas, Gary A. MacMillan, Martin, Lucas & Chioffi, Stamford, CT, for Greenwich Anesthesiology Associates, P.C., defendant.

## RULINGS ON POST–TRIAL MOTIONS

DORSEY, Senior District Judge.

Plaintiff moves for a determination of front pay, for attorneys' fees, to set the amount of punitive damages, and for pre-judgment and post-judgment interest.

## I. BACKGROUND

Plaintiff was an anesthesiologist employed by Defendant. At the end of October 1997, she voluntarily left work on full-time disability leave. When she did not return to work within six months, her employment agreement was triggered and her employment agreement was terminated. She agreed to return to work in early May 1998. However, she and Defendant were unable to come to terms for her resumption. On May 6 and again on May 12, 1998, she was offered less than full-time work; she declined both.

At the age of 56, she filed a claim with the Connecticut Commission on Human Rights and Opportunities on June 11, 1998. On July 5, 2001, a jury found for Plaintiff on her disability claim under the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a–

60(a)(1), awarding her $585,000 in economic damages and $200,000 for emotional distress. Defendant was also found to have violated CFEPA willfully, recklessly, maliciously, or oppressively.

## II. PLAINTIFF'S MOTION FOR DETERMINATION OF FRONT PAY

Determination of an award of future lost earnings was previously reserved. Plaintiff now moves for front pay until she turns 65, a total of five years. Alternatively, she argues for 22 months of front pay, which represents the balance of a five-year employment contract, as was entered into by two other part-time doctors employed by Defendant.

■ An award of front pay is a form of equitable relief, see *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (Age Discrimination in Employment Act ("ADEA") claim), which is a matter for the trial judge's equitable discretion, *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1258 (2d Cir.1987) (ADEA claim). "Generally, front pay is awarded as a substitute remedy only when reinstatement is inappropriate . . . ." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir.1998) (Title VII gender discrimination and retaliation claims). Front pay is an appropriate remedy when it would be inappropriate to reinstate a plaintiff due to excessive hostility or antagonism between the parties. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir.1986) (Title VII gender discrimination claim). Plaintiff now asserts, unlike at trial, and Defendant does not dispute that there is sufficient animosity between the parties to make reinstatement inappropriate.

■ That in and of itself does not answer the question. Whether reinstatement would be inappropriate is an equitable question for this court to resolve. Plaintiff argued at trial that Defendant's assertions of hostility were pretextual. Further, she asserted at trial that she was able and amenable to work at least part-time. The jury found Defendant's discriminatory animus was a substantial factor in her termination. On that basis, reinstatement would not necessarily be a problem. Indeed, she sought continuation of her employment through a renewal of her employment contract. The evidence included Defendant's offer of part-time employment. Therefore, reinstatement could be found not to be a problem.

■ Reinstatement constitutes a more equitable resolution than an award of front pay. *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 373 (3d Cir.1987) ("[b]ack pay coupled with reinstatement is the preferred remedy [for] future damages") (ADEA claim). Not only would Plaintiff receive compensation for continued unemployment resulting from Defendant's discrimination, but Defendant would have a more equitable result of receiving her services and compensating her therefor. See *Truskoski v. ESPN, Inc.*, 823 F.Supp. 1007, 1015–16 (D.Conn.1993) (gender retaliation claim). By not seeking reinstatement, even in the alternative, Plaintiff would deny Defendant the option and obtain front pay without providing it services.

It is found that Plaintiff may not, in seeking redress for discrimination-induced future unemployment, concede a basis for the denial of reinstatement and seek only front pay, seemingly waiving any claim for reinstatement. If that were her right, she would thereby deny Defendant the opportunity to obtain her services while compensating therefor, as opposed to compensating her without receiving her services. Further, if Plaintiff were entitled to compensation for the discrimination that made her jobless and if she could bypass rein-

statement and seek only front pay, claimants such as Plaintiff would almost always choose to receive compensation without having to work for it. It is inconsistent with the concept of reinstatement as the primary method of compensation for unlawful termination to permit her to waive a claim for reinstatement and be granted front pay when reinstatement is a viable alternative. Only by seeking reinstatement first, only to have the court find that remedy to be inappropriate, may a plaintiff, in the alternative, be entitled to front pay. Only in that manner would a defendant be held to pay front pay without receiving the services for which the compensation normally would be intended.

In light of Plaintiff's evidence and arguments at trial that Defendant's assertions of hostility were pretextual and that she was able and amenable to working for Defendant, her motion for front pay as the sole forward-seeking remedy is denied.

## III. PLAINTIFF'S MOTIONS FOR AT-TORNEYS' FEES

Plaintiff moves for an amended award of attorneys' fees in the amount of $219,867.67 plus expenses of $2,689.51. The attorneys' fees breaks down to $18,701.42 for the law firm of Whitman, Breed, Abbott & Morgan and $201,166.25 for the law firm of Casper & de Toledo.

■ CONN. GEN. STAT. § 46a–104 provides that a successful plaintiff may recover "such legal and equitable relief which it deems appropriate including, but not limited to, ... attorney's fees and court costs." An award of attorneys' fees need not be based on expert testimony or factual evidence at trial. *Piantedosi v. Floridia*, 186 Conn. 275, 279–80, 440 A.2d 977 (1982) (promissory note claim); *see Bizzoco v. Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984) ("courts may rely on their general knowledge of what has occurred at the

proceedings before them to supply evidence in support of an award of attorney's fees") (promissory note claim).

### A. Number of Hours

Defendant makes a number of attacks on the total number of hours billed.

#### 1. Vagueness

■■ Defendant asserts that the documentation and many activity descriptions are inadequate or vague and justify reduction in the requested fees. *See Gilmore v. Bergin*, No. 3:95CV01838(DFM), 1998 WL 1632526, at *9 (D.Conn. Sept.22, 1998) (percentage reduction) (42 U.S.C. § 1983 and wrongful termination claim); *Soler v. G & U, Inc.*, 801 F.Supp. 1056, 1061 (S.D.N.Y.1992) (disallowance of vague entries) (Fair Labor Standards Act claim). Time entries should specify the attorney, the date, the hours expended, and a description of the work done sufficient to evaluate its appropriateness. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983) (42 U.S.C. § 1983 claim). Other than a single example, Defendant does not identify any descriptions as too vague. The cited description, "Jury selection in preparartion [sic] for jury trial in New Haven," is not vague, especially in light of the fact that jury selection was actually held that day.

#### 2. Focus group

■ Defendant challenges the 26.8 hours billed by Attorney Victoria de Toledo for time spent in a focus group. Plaintiff justifies this time as appropriate to help her "sharpen the issues, narrow claims and more skillfully present [her] case." While perhaps interesting, such time is not seen as reasonably advancing Plaintiff's claims. The 26.8 hours are not allowed.

### 3. Local Rule 9(c)(2) statement

Plaintiff once filed an improper Local Rule 9(c)(2) statement, which required re-submittal. Defendant challenges the 7.5 hours in correcting this error. Plaintiff does not object to the reduction if this court deemed them inappropriate. The 7.5 hours are not allowed.

### 4. Non-viable claims

 Defendant challenges time spent on claims that did not survive summary judgment, such as her American with Disabilities Act ("ADA") discrimination claim, her ADA retaliation claim, her ADEA retaliation claim, her CFEPA retaliation claim, her negligent misrepresentation claim, her negligent infliction of emotional distress claim, and her intentional infliction of emotional distress claim. It challenges time spent on claims not submitted to the jury, such as her CFEPA aiding and abetting discrimination claim. It challenges time spent on claims not sustained by the jury, such as her ADEA discrimination claim and her CFEPA age discrimination claim.

"Where the issues are intertwined factually, a fully compensatory fee award is justified even where a plaintiff does not prevail on all his claims or obtain all the relief requested in his complaint." *Dague v. City of Burlington*, 935 F.2d 1343, 1358–59 (2d Cir.1991) (Resource Conservation and Recovery Act and Clean Water Act citizen-suit claims), *rev'd in part on other grounds*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Time spent on her ADA discrimination claim is factually intertwined with her CFEPA disability discrimination claim, a claim at which she prevailed at trial. Her ADEA discrimination claim and her CFEPA age discrimination claims, although not successful at trial, were worthy claims and are factually intertwined with her other discrimination claims. For these four claims no additional reduction in the hours billed is warranted.

Her remaining seven claims were not factually intertwined with these other claims and were not meritorious. While such may have a been an acceptable litigation tactic, time spent in pursuit of these claims is not found to be reasonable. Recovery of fees for such efforts would not qualify as "equitable" or "appropriate." *See* CONN. GEN. STAT. § 46a–104.

The majority of the hours spent would have been expended on the prevailing claims, even absent the other seven claims, such as most of the time spent in discovery efforts and all of the time spent at trial. Estimating the time devoted exclusively to the non-intertwined claims, a 15% reduction of the hours claimed is deemed fair and reasonable.

### B. Attorney Hourly Rates

 Defendant challenges Attorney Rhonna Rogol's rate of $225 as too high and unsubstantiated as the prevailing rate for someone of her experience in this geographic area. After review of her affidavit describing her relevant legal experience, a rate of $150 per hour is deemed reasonable.

 Plaintiff seeks recovery for Attorney de Toledo's services at a rate of $300 per hour and submits an affidavit by a local attorney asserting its reasonableness. Considering the rates for comparable experience in the area, a reasonable rate for her services is found to be $225 per hour throughout her work on this case.[1]

---

1. Plaintiff requests her current rate of $300 per hour to be applied retroactively, even though at the time her services were billed, her hourly rate was less. *But see N.Y. State*

## C. Calculation of the fee award

 Attorney de Toledo's hours found to be reasonable, 443 at $225 per hour, plus Attorney Rogol's reasonable hours, 108 at $150 per hour, plus the paralegals' reasonable hours, 59 at $85 per hour, and plus Whitman, Breed, Abbott & Morgan's hours, 60 at $210 per hour, result in a reasonable fee award of $133,490. The requested expenses, $2,689.51, are not challenged and are awarded.

## D. Plaintiff's Supplemental Motion for Attorneys' Fees

Plaintiff's previous motion for attorneys' fees is denied as moot in light of the amended motion, resolved above.

 Plaintiff's supplemental motion for attorneys' fees seeks an additional $17,103 in attorneys' fees and $1,474.07 in supplemental expenses. After review and absent opposition, the hours billed are found to be reasonable and not subject to reduction. The hours billed were post-verdict and so do not reflect efforts expended on non-viable claims.

The supplemental motion is granted. Based on 40.45 hours for Attorney de Toledo, 17.6 hours for Attorney Rogol, 5 hours for a paralegal, and 2.2 hours for Whitman, Breed, Abbott & Morgan, all at the above rates, $12,628.25 is awarded. The unopposed request for $1,474.07 in additional expenses is granted.

## IV. PLAINTIFF'S MOTION TO SET AMOUNT OF PUNITIVE DAMAGES

 Plaintiff moves for an award of punitive damages under CFEPA. Conn. Gen. Stat. §. 46a–104 provides that a successful plaintiff may recover "such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." Thus, the statute explicitly provides for awards of attorneys' fees but does not explicitly provide for awards of punitive damages. From this, some Connecticut courts have found that the language of the statute precludes an award of punitive damages, *see, e.g., Peckinpaugh v. Post–Newsweek Stations Conn., Inc.,* No. 3:96CV2475(AVC), 1999 WL 334838, at *4 (D.Conn. Mar.17, 1999) (Title VII and CFEPA gender discrimination and retaliation claims); *Craine v. Trinity Coll.,* No. CV950555013S, 1999 WL 1315017, at *11 (Conn.Super.Ct. Dec.27, 1999) (Title VII and CFEPA gender discrimination claims), *rev'd in part on other grounds,* 259 Conn. 625, 791 A.2d 518 (2002), while others have found that punitive damages are available under the statute, *see, e.g., Collier v. State,* No. CV96–80659, 1999 WL 300643, at *3–4 (Conn.Super. May 3, 1999) (ADEA and CFEPA age discrimination and retaliation claims); *Cantoni v. Xerox Corp.,* No. CV98–0582705–S, 1999 WL 73918, at *2 (Conn.Super. Feb.3, 1999) (CFEPA claim). In light of the disposition below, this controversy need not be addressed.

 The jury found that Defendant violated CFEPA willfully, recklessly, maliciously, or oppressively. Punitive damages in Connecticut are measured by reasonable attorneys' fees and costs. *See Ford v. Blue Cross & Blue Shield of Conn., Inc.,* 216 Conn. 40, 59 n. 4, 578 A.2d 1054 (1990) (wrongful termination claim). Plaintiff's argument is that above and beyond an award of attorneys' fees, she should be awarded punitive damages. In essence, she argues that the jury finding entitles her to a doubling of any at-

*Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1153 (2d Cir.1983) (applying historic rates in multi-year cases to avoid windfall) (42 U.S.C. § 1983 claim).

torneys' fee award. For support, she points to a single case, *Collier*, 1999 WL 300643, at *3–5, in which the plaintiff was awarded the same amount for punitive damages and attorneys' fees and the two amount were added together. In its doubled award, there is no citation of legal authority, only a notation of the absence of case law holding to the contrary. *Id.* at *3. This holding of *Collier* is not accepted.

The two methods of recovery are not cumulative. *Trimachi v. Conn. Workers Comp. Comm.*, No. CV97–0403037S, 2000 WL 872451, at *2–5 (Conn.Super. June 14, 2000) (CFEPA disability discrimination and retaliation claims); *Gilmore*, 1998 WL 1632526, at *10–11 (punitive damages and attorneys' fees under 42 U.S.C. § 1988 both allowed, but plaintiff could not recover both). While Plaintiff is not denied the remedy of punitive damages, the attorneys' fees awarded above satisfies any entitlement.

## V. PLAINTIFF'S MOTION FOR PRE–JUDGMENT AND POST–JUDGMENT INTEREST

### A. Pre–Judgment Interest

 Plaintiff moves for pre-judgment interest pursuant to CONN. GEN. STAT. § 37–3a. At the rate of 10% from May 11, 1998 (the day after her employment agreement lapsed) until July 5, 2001 (the date of the jury verdict) on the back-pay award of $585,000, she claims $96,358.28. The Connecticut statute provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions ... as damages for the detention of money after it becomes payable." CONN. GEN. STAT. § 37–3a. The purpose is to compensate the prevailing party for the delay in obtaining money that rightfully belongs to him. *Neiditz v. Morton S. Fine*

*& Assocs., Inc.*, 199 Conn. 683, 691, 508 A.2d 438 (1986) (negligence claim).

 Both sides agree that an award of pre-judgment interest is discretionary. (Dkt. No. 75 at 2; Dkt. No. 85 at 1); *see Paulus v. Lasala*, 56 Conn.App. 139, 147, 742 A.2d 379 (1999) (breach of contract and New Home Warranties Act claims); *see also* CONN. GEN. STAT. § 37–3a ("may be recovered"). The determination is one to be made in view of the demands of justice rather than through the application of any arbitrary rule. *W. Haven Sound Dev. Corp. v. City of W. Haven*, 207 Conn. 308, 321, 541 A.2d 858 (1988) (breach of contract claim). A trial court should determine "whether the party against whom interest is sought has wrongfully detained money due the other party." *Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*, 239 Conn. 708, 735, 687 A.2d 506 (1997) (breach of contract claim). If so, a trial court should then determine "the date upon which the wrongful detention began," *id.*, and the appropriate pre-judgment interest rate, *Sears Roebuck & Co. v. Bd. of Tax Review of W. Hartford*, 241 Conn. 749, 766, 699 A.2d 81 (1997) (Section "37–3a establishes a maximum rate above which a trial court should not venture") (tax appeal claim).

"Prejudgment interest discourages an employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages." *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992) (alterations, internal quotation marks, and citation omitted) (Title VII race discrimination claim). Under other federal statutes "it is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back-pay award." *Id.* at 1154 (emphasis in original; internal quotation marks and ellipsis omitted).

The jury awarded $585,000 as back pay damages. Plaintiff breaks this amount ev-

enly into 78 semi-monthly periods from May 11, 1998 to July 5, 2001 and applies a *pro rata* interest to each period.[2]

 Given the evidence at trial, the jury could have concluded that she would have re-initiated employment sometime after May 11, 1998 and/or that she would have worked for part but not necessarily all of the time until July 5, 2001. The jury was confronted with the issue of whether she did or did not mitigate her economic damages during the entire approximately three-year period. The jury award of $585,000 does not identify how these uncertainties were resolved.

The challenge presented by the motion, in the face of these uncertainties, is to discern what fairly represents an equitable accommodation of Plaintiff's use of the amounts included in the $585,000 to which she has been found entitled. Defendant is found to have wrongfully detained money owed Plaintiff in varying amounts and over

2. Plaintiff chooses semi-monthly periods because she assertedly was to have been paid approximately twice per month. To determine the semi-monthly interest rate, she divides 10% by 24, the number of pay periods, to arrive at 0.417% per period. Because of compounding interest, 0.417% compounded semi-monthly is equivalent to approximately 10.5% per year. The correct semi-monthly rate would be approximately 0.398%. Plaintiff then divides the year not into semi-monthly periods but into 15-day periods, further altering the rate of compounding. She also allocates a half month's pay and a half month's interest as of May 11, 1998, even though no entitlement had then accrued. No pay would have been due until a half month later and only then would it have begun the cycle of accruing interest. She also calculates the final pay period, at an entire half month's interest for only eleven days.

3. These are not found to have been the starting and ending days of her employment, but, for purposes of calculating an equitable amount of pre-judgment interest only, they are appropriate dates not inconsistent with the evidence at trial.

different periods from May 11, 1998 to July 5, 2001.[3] As to the interest rate, this court in its discretion chooses the rate of approximately 7.5% per year.[4] Compounded semi-monthly, this rate produces pre-judgment interest of $70,626.71.

### B. Post–Judgment Interest

Plaintiff moves for post-judgment interest on the total jury award of $785,000, on any front pay award, and on any punitive damages award. Plaintiff argues for the rate to be set by 28 U.S.C. § 1961.[5] Defendant does not oppose. Post-judgment interest is granted accordingly, with the exception of punitive damages. Punitive damages in Connecticut are measured by reasonable attorneys' fees and costs. *See Ford*, 216 Conn. at 59 n. 4, 578 A.2d 1054. Post-judgment interest is not available for attorneys' fees, which are not set until this time and thus are not seen as withheld by Defendant except from this date forward.

4. Plaintiff asked for $795,324.45 and received $585,000 or 73.55%. Pre-judgment interest is calculated (starting the pay one semi-month after May 11, 1998, starting the first interest payment one month after May 11, 1998, for 75.64 semi-month periods, and calculating the final partial period on a *pro rata* basis) and then the interest rate is back-figured so it produces 73.55% of this amount.

5. The statute provides,

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court .... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment ....

(b) Interest shall be computed daily to the date of payment ... and shall be compounded annually.

28 U.S.C. § 1961(a),(b).

It is likewise not available for punitive damages.

## VI. OTHER PENDING ISSUES

In light of the verdict, Plaintiff's motion *in limine*, (Dkt. No. 47), is denied as moot.

On July 2, 2001, at the close of Plaintiff's evidence, Defendant orally moved for judgment as a matter of law, (Dkt. No. 55.) The motion was taken under advisement. On July 3, 2001, Defendant filed a written pre-verdict motion for judgment as a matter of law, (Dkt. No. 56). Decision on the motion was reserved. In light of the denial, (Dkt. No. 97), of Defendant's post-verdict motion for judgment as a matter of law, (Dkt. No. 78), both pre-verdict motions are denied.

On October 29, 2001, Defendant's motion under FED. R. APP. P. 4(a)(5), (Dkt. No. 98), was granted, extending the time to file a notice of appeal until the pending motions were resolved. The notice of appeal is due thirty days from when the Clerk enters judgment in accordance with these rulings.

## VII. CONCLUSION

Plaintiff's motion for determination of front pay, (Dkt. No. 68), is **denied.**

Plaintiff's post trial motion for interest, (Dkt. No. 70), is **granted** to the extent of pre-judgment interest of $70,626.71 and post-judgment interest, pursuant to 28 U.S.C. § 1961, on the total jury award of $785,000.

Plaintiff's motion for attorneys' fees and costs, (Dkt. No. 73), is **denied as moot.** Plaintiff's amended motion for attorneys' fees and costs, (Dkt. No. 80), is **granted** to the extent of $133,490 in attorneys' fees and $2,689.51 in expenses. Plaintiff's supplemental motion for attorneys' fees and costs, (Dkt. No. 94), is **granted** to the

extent of an additional $12,628.25 in attorneys' fees and $1,474.07 in expenses.

Plaintiff's post trial motion to set amount of punitive damages, (Dkt. No. 69), is **granted.** However, no additional award above that awarded under Plaintiff's motions for attorney's fees and costs is made.

Plaintiff's motion *in limine*, (Dkt. No. 47), is **denied as moot.**

Defendant's July 2, 2001 oral motion for judgment as a matter of law is **denied.**

Defendant's motion for judgment as a matter of law, (Dkt. No. 56), is **denied.**

The Clerk shall enter judgment accordingly.

Plaintiff shall submit a detailed calculation of the post judgment interest from July 5, 2001 to the date of payment per 28 U.S.C. § 1961(a)(b). If there is no agreement on the subject, the parties may submit their respective calculations for resolution by the Court.

SO ORDERED.