# JOHN D. PAULUS ET AL. *v.* ANDREW LASALA, JR., ET AL.
## (AC 18162)

O'Connell, C. J., and Spear and Dupont, Js.

Argued September 13—officially released December 21, 1999

140

*James R. Fogarty*, with whom was *Carolyn Alexander Collins*, for the appellants-appellees (defendants).

*Alan R. Spirer*, for the appellees-appellants (plaintiffs).

*Opinion*

DUPONT, J. This case concerns a contractual dispute between the plaintiff homeowners, John D. Paulus and Carol A. Paulus, and the defendant builders, Andrew LaSala, Jr., and Cannondale Development Associates.[1] The plaintiffs sought damages for the defendants' alleged failure to construct their home in a timely and proper manner. The plaintiffs brought a three count complaint alleging a breach of contract, a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and a breach of the New Home Warranties Act, General Statutes § 47-116 et seq. An attorney trial referee tried the case and issued

[1] The defendant Andrew LaSala, Jr., is a general partner of the defendant Cannondale Development Associates.

a report, setting forth findings of fact and recommending that judgment be rendered on counts one and three of the plaintiffs' complaint in favor of the plaintiffs in the amount of $73,119.[2] The referee also recommended that prejudgment interest in the amount of $40,494.40 be awarded on a portion of the damages. The trial court accepted the report but disagreed with the referee's conclusion as to the termination date for the calculation of the prejudgment interest, concluding instead that, as a matter of law, prejudgment interest runs until the date of the judgment.

The defendants appeal from the judgment of the trial court rendered in the amount of $232,907.47. The judgment includes $73,119, the compensatory damages found to be due the plaintiffs; prejudgment interest on $38,424, which was that portion of the compensatory damages found to be due pursuant to General Statutes § 37-3a,[3] at the rate of 10 percent per year from July 6, 1987, through January 20, 1998, in the total amount of $40,494.40; and offer of judgment interest in the amount of $119,294.07. The plaintiffs cross appeal from the denial of their claim for a refund from the defendants and from the denial of their claim for damages for the defendants' alleged unfair trade practice in violation of General Statutes § 42-110b. We affirm the judgment of the trial court.

## I

### THE DEFENDANTS' APPEAL

The defendants claim (1) that the trial court should not have reviewed the conclusion of the attorney trial

---

[2] The attorney trial referee concluded that the defendants' conduct had not violated CUTPA, as alleged in count two of the plaintiffs' complaint. The trial court, by accepting the attorney trial referee's report in its entirety except as to the time period for the calculation of prejudgment interest, upheld that conclusion. The plaintiffs have cross appealed from the judgment for the defendants on count two of their complaint.

[3] General Statutes § 37-3a provides in relevant part: "Except as provided in [section] . . . 52-192a, interest at the rate of ten per cent a year, and no

referee that prejudgment interest on a portion of the award terminated as of the date the trial began because the plaintiffs failed to object to the acceptance of the referee's report and (2) that, if the referee's conclusion was reviewable, the trial court improperly rejected the referee's termination date and instead improperly extended the termination date of the running of interest to the date of the judgment. Subsumed in the latter issue is the defendants' claim that the court should have remanded to the referee the issue of when interest should terminate, given the fact that the court had concluded that the termination date selected by the referee was improper. The defendants also claim that they were improperly denied oral argument on their exceptions and objections to the acceptance of the referee's report.

As the defendants correctly note in their brief, the issues raised in their appeal are "for the most part procedural and legal in nature. Thus, most of the facts developed in trial are not relevant to the appeal."

The undisputed relevant procedural facts are not numerous. The initial report of the attorney trial referee recommended denial of prejudgment interest. The plaintiffs and the defendants filed motions to correct the report, and, in response to the plaintiffs' motion, the referee reconsidered his initial recommendation that prejudgment interest not be awarded and recommended an award of such interest on a portion of the plaintiffs' compensatory damages, namely $38,424.50. The referee recommended that the interest on that sum run from July 6, 1987, to April 28, 1993, the date the trial began. The trial court rejected the referee's termination date for the running of interest, concluding that interest must run to the date of judgment, namely, January 20, 1998.

more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

The plaintiffs filed an offer of judgment in the amount of $105,000 on April 11, 1989.[4] If the termination of the period of time for the calculation of interest as stated by the referee is correct, the amount of prejudgment interest and compensatory damages due the plaintiffs would total less than the offer of judgment. If the prejudgment interest, however, is calculated to the date of the judgment, as the court concluded, and is added to the compensatory damages of $73,119, the total, $113,613.40, exceeds the offer of judgment.[5] The plaintiffs and the defendants agree that any prejudgment interest award would begin on July 6, 1987, as found by the referee. That date was found by the referee to be the date on which the defendants indicated that all further work on the house would cease. The parties also agree that § 37-3a interest may be awarded at the discretion of the fact finder.

The defendants first claim that the plaintiffs waived their right to challenge the referee's conclusion as to the date of termination for the calculation of interest

[4] General Statutes § 52-192a provides that after the commencement of any civil action based upon contract or seeking the recovery of money damages, the plaintiff may before trial file with the clerk of the court a written offer of judgment. "If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ." General Statutes § 52-192a (b).

[5] The defendants do not argue on appeal that the damages and prejudgment interest should not be included in the plaintiffs' damages for purposes of General Statutes § 52-192a. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 307, 472 A.2d 306 (1984); *Gillis* v. *Gillis*, 21 Conn. App. 549, 553–55, 575 A.2d 230, cert. denied, 215 Conn. 815, 576 A.2d 544 (1990); but see *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 166 n.25, 681 A.2d 293 (1996); or that the mandatory application of § 52-192a renders an award of § 37-3a interest inequitable. See *Loomis Institute* v. *Windsor*, 234 Conn. 169, 182, 661 A.2d 1001 (1995); *Munroe* v. *Emhart Corp.*, 46 Conn. App. 37, 44–45, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997). Also, the defendants do not argue that the rate of interest should be less than the maximum specified in § 37-3a. See *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 766, 699 A.2d 81 (1997).

because of their failure to file an objection to the acceptance of the report. We are not persuaded.

The plaintiffs filed a motion to correct the referee's report by seeking an award of prejudgment interest to be added to their damages. In the motion, they argued that although an award of prejudgment interest is discretionary, equity called for interest in this case because the money had been withheld by the defendants for nine years.

In response to the plaintiffs' motion to correct, the attorney trial referee corrected the report by recommending an award of prejudgment interest from July 6, 1987, to April 28, 1993, the date of the commencement of trial, on the damages that he had previously found due for incomplete contractual items and for poor workmanship items. The plaintiffs' motion to correct was filed on February 22, 1996. On February 12, 1996, the plaintiffs filed exceptions to the referee's report, pursuant to Practice Book § 439, now § 19-13. The exceptions related to claims (1) for a refund of $18,600 paid to the defendants at the closing, which relates to the plaintiffs' cross appeal, and (2) that prejudgment interest should run to the date of judgment, rather than to the date on which the trial began. The defendants argue that the plaintiffs should have filed an objection to the referee's report, and that the plaintiffs' motion to correct and their exceptions cannot cure the failure to file an objection. The defendants filed objections to the acceptance of the report, one of which was the claim that the plaintiffs were not entitled to prejudgment interest.

To assess the defendants' claim, we must examine the relevant rules of practice. The plaintiffs did not challenge any of the referee's factual conclusions or evidentiary rulings, which challenges should be made by way of objection. See Practice Book § 19-14, formerly § 440. Objections and exceptions to the acceptance of a

referee's report are addressed to the trial court, whereas motions to correct are addressed to the referee. Practice Book § 19-12, formerly § 438, provides that a party may seek to correct a report by setting forth the changes and additions desired in the report. The changes may relate to the "striking out [of] any of the facts found, or by adding further facts . . . ." Practice Book § 19-12. When a plaintiff does not file an objection to the acceptance of a referee's report but properly files "both a motion to correct pursuant to Practice Book § 438 [now § 19-12], and a subsequent exception to the report and findings of the referee pursuant to Practice Book § 439 [now § 19-13] . . . [h]e is, therefore, entitled to full appellate review of the trial court's disposition of his exceptions to the report." (Citations omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 619 n.3, 525 A.2d 1343 (1987).

We conclude that there was no reason for the plaintiffs to object to the acceptance of the referee's report because, as stated in the plaintiffs' exceptions to the report, they "accept all of the facts found" and their exceptions "relate only to two of the [referee's] proposed conclusions of law."

The defendants next claim that the trial court should have held oral argument prior to rendering judgment on the referee's report. Practice Book § 19-16, formerly § 442, provides in relevant part that "[i]f exceptions or objections have been seasonably filed, the case should be claimed for the short calendar for hearing thereon . . . ." Practice Book § 11-18 (a), formerly § 211, provides in relevant part: "Oral argument is at the discretion of the judicial authority except as to motions to dismiss, motions to strike, motions for summary judgment, and motions for judgment of foreclosure. For those motions, oral argument shall be a matter of right, provided (1) the motion has been marked ready for adjudication . . . and (2) the movant indicates at the bottom of the

first page of the motion or on a reclaim slip that oral argument or testimony is desired . . . ." The defendants did not request oral argument on the first page of their exceptions or objections to the report.

The defendants argue that Practice Book § 442, now § 19-16, obviates the necessity that they claim their objections and exceptions for a hearing on the short calendar. The plaintiffs argue that even if § 442 grants the defendants oral argument as of right, it is not automatic but must be claimed for argument as provided in § 211. We agree with the plaintiffs. Aside from the plain meaning of the words of those sections, which do not grant oral argument as of right to the defendants, judicial economy and practicality require a common-sense reading of both sections. The sheer volume of short calendar matters would cause a scheduling nightmare if each matter had to be scrutinized by clerks to see if it could be gleaned from the content of the matter that the movant, without specifically requesting argument, really wanted argument, before determining if the rules of practice allowed oral argument.

Even if Practice Book § 206, now § 11-13 (a), which provides that "all issues of law must be placed on the short calendar list," required a hearing to determine the issue without the necessity of any claim for oral argument, the defendants do not rely on § 206. They contend the issue is not a question of law but one of fact.

The defendants' final claim is that even if the trial court properly reviewed the decision of the attorney trial referee recommending an award of prejudgment interest, the court improperly rejected the referee's termination date for the running of prejudgment interest and should have remanded the case to the referee to decide the allegedly factual question of when prejudgment interest should terminate. We disagree.

It is clear that Connecticut case law establishes that prejudgment interest is to be awarded if, in the discretion of the trier of fact, equitable considerations deem that it is warranted. *State* v. *Lex Associates*, 248 Conn. 612, 628, 730 A.2d 38 (1999); *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 703, 590 A.2d 957 (1991); *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 738, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). If interest is due, it is an element of damages. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 482, 542 A.2d 692 (1988); *Foley* v. *Huntington Co.*, supra, 738. The defendants in this case do not argue that the referee abused his discretion in recommending an award of prejudgment interest or that such interest is not an element of the plaintiffs' compensatory damages. The defendants claim that the date of termination of prejudgment interest is a factual question within the discretion of the referee. The plaintiffs claim that it is a question of law properly decided by the court.

Noncontractual interest on money wrongfully detained was not sanctioned at common law; see K. Conway, "Interest on Damages in Connecticut," 30 Conn. B.J. 407 (1956); but has long been awarded pursuant to statute in Connecticut. General Statutes (Rev. to 1949) § 6778; General Statutes (1902 Rev.) tit. 45, § 4600; General Statutes (1888 Rev.) tit. 49, § 2942. These statutes are the ancestors of § 37-3a. The statutes enacted prior to § 37-3a provided for varying maximum rates of interest, but all provided, as does § 37-3a, for recovery of interest in civil actions "as damages for the detention of money after it becomes payable." Neither those statutes nor § 37-3a provide a date for the termination of the interest.

It has long been recognized that there is no right to interest on a disputed demand unless a contract or a statute so provides. *New York, N. H. & H. R. Co.* v.

*Ansonia Land & Water Power Co.*, 72 Conn. 703, 705, 46 A. 157 (1900). The annotations to § 4600 of the 1902 revision of the General Statutes indicate that statutory interest has existed since 1702, and that damages have been allowed in Connecticut cases pursuant to statute since at least 1814. See *Selleck* v. *French,* 1 Conn. 32 (1814).

We conclude that the question of whether prejudgment interest runs until the date of judgment is a legal one because it requires a resolution of the meaning of the words of a statute. Because statutory construction is a question of law, our review is plenary. *Hammond* v. *Commissioner of Correction,* 54 Conn. App. 11, 16, 734 A.2d 571, cert. granted on other grounds, 251 Conn. 919, 742 A.2d 358 (1999). In deciding this issue, we are guided by settled principles of statutory construction. "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Sears, Roebuck & Co.* v. *Board of Tax Review,* 241 Conn. 749, 758–59, 699 A.2d 81 (1997).

The conclusions that an attorney trial referee may properly make relate to factual determinations made on the basis of subordinate facts and do not extend to questions of law. See *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 502, 508 A.2d 415 (1986) ("an attorney referee is simply a factfinder whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court"); *State Bank of Westchester* v. *New Dimension Homes of Connecticut, Inc.,* 38 Conn. App. 491,

497, 661 A.2d 119 (1995) (legal conclusions reached by attorney trial referee have no conclusive effect). Because we are dealing with a question of law, the recommendation of the attorney trial referee as to when prejudgment interest terminates need not be heeded. See *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 510. The defendants argue that the beginning and termination dates for the running of prejudgment interest should both be treated as factual questions to be decided by the attorney trial referee. There is no doubt that case law has established that the commencement date for prejudgment interest is a factual determination. See, e.g., *Metcalfe* v. *Talarski*, 213 Conn. 145, 160, 567 A.2d 1148 (1989); *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 134–35, 665 A.2d 86, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

Although the general rule is that statutory prejudgment interest runs to the date of the time of the verdict or decree; 22 Am. Jur. 2d, Damages § 674 (1988); neither we, nor the parties, are aware of any appellate case directly holding that prejudgment interest pursuant to § 37-3a or its statutory ancestors runs to the date of judgment. There are many cases, however, that imply it; see *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 301, 308, 472 A.2d 316 (1984); *Stoddard* v. *Sagal*, 86 Conn. 346, 350, 85 A. 519 (1912); or uphold an award of interest to the date of judgment where that is not the issue; *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 675–76, 591 A.2d 101 (1991) ("a trial court has discretion, under General Statutes § 37-3a, to award prejudgment interest on an arbitration award retroactively to some date prior *to the date of the trial court's judgment* affirming the award" [emphasis added]); *Atlas* v. *Miller*, 20 Conn. App. 680, 684–85, 570 A.2d 219 (1990); or state it in dicta; *Lawrence* v. *New Hampshire Ins. Co.*, 29 Conn. App. 484, 497, 616 A.2d 806, cert. denied, 224 Conn. 923, 618 A.2d 528 (1992)

(prejudgment interest may run from date of arbitration award to date trial court rendered judgment); or hold that prejudgment interest runs to the date of the judgment without referring to a statute. *Loomis* v. *Gillett*, 75 Conn. 298, 301, 53 A. 581 (1902); *Regan* v. *New York & New England R. R. Co.*, 60 Conn. 124, 142, 22 A. 503 (1891); *Parrott* v. *Housatonic R. R. Co.*, 47 Conn. 575, 576 (1880). Because prejudgment interest in noncontractual cases was unknown at common law and because Connecticut has had a statute allowing such interest since our earliest cases, we conclude that the basis for the award of the interest in the latter cases must have been statutory. This imputed judicial gloss on our statutes persuades us to interpret § 37-3a as providing for interest to the date of the judgment.

The paucity of cases that specifically decide the termination date of the running of statutory prejudgment interest is more a function of a failure to litigate the obvious than a failure to raise and decide the issue. The date the interest *begins* to run pursuant to § 37-3a is factual because it necessarily involves a determination of when the wrongful detention began. *Patron* v. *Konover*, 35 Conn. App. 504, 517, 646 A.2d 901, cert. denied, 231 Conn. 929, 648 A.2d 879 (1994). The date when the wrongful detention terminates is definitively known when judgment is rendered and cannot sooner occur.

The statute provides for an award of interest on money from the time money is wrongfully withheld. *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.*, 18 Conn. App. 559, 566, 559 A.2d 241 (1989). Money remains due until it is paid. Until such time as the damages are ascertained and are actually ordered to be paid, they remain due. Until a trial is over and judgment is rendered for a plaintiff, a plaintiff cannot be sure of any recovery. The money may have been wrongfully detained prior to judgment, and it is deemed as such

when judgment finally is rendered, in effect awarding interest retroactively, but interest cannot be due *and* payable until judgment is rendered. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 307.

Sections 37-3a and 52-192a should be read together. Id. Section 52-192a provides for interest until the date of judgment. Id. There is no reason to assume that the legislature would provide that one type of interest should be treated differently from the other. Also, the word prejudgment implies interest until a judgment is rendered.

*Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 751, 687 A.2d 506 (1997), is instructive in determining the question of whether prejudgment interest runs to the time of judgment. In that case, the defendant argued that an informal stay of proceedings for three years should toll § 52-192a "offer of judgment" interest. Id., 753. The plaintiff did not formally agree to a stay in state court while discovery proceeded in federal litigation. Id., 752. Because § 52-192a interest is mandatory and is intended to encourage prompt settlement of cases, the court reasoned that there should be no exception for its running until judgment. Id., 753. Although § 37-3a is not mandatory, its purpose is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants. That purpose would be frustrated in cases such as this, where neither party caused a delay in the rendering of judgment, if the time for interest to be paid were shortened to a date other than that of the judgment. We hold that § 37-3a interest when awarded runs until judgment is rendered. This holding, however, is not intended to prevent a plaintiff from waiving this termination date for the running of interest and agreeing to a lesser period of time for interest as consideration for a defendant's agreement to a stay in the proceedings or a continuance.

There is no purpose in remanding this case to the attorney trial referee or the trial court because our plenary review of this question of law has already decided the issue.

## II

### THE PLAINTIFFS' CROSS APPEAL

The plaintiffs seek repayment of $18,600 that was paid to the defendants at the real estate closing. The plaintiffs argue on appeal that this amount was an overpayment in excess of the contract price and that they are entitled to its return. They also argue that the defendants violated CUTPA. We do not agree.

The attorney trial referee concluded that the demand for the additional sum was not necessarily a breach of the contract of the parties or an unfair trade practice under CUTPA. The underlying facts found by the referee were that the defendants demanded $18,600 at the closing, the plaintiffs paid it, there were no written change orders, the first time a demand for the money was made was at the closing, and the plaintiffs were sophisticated and represented by capable counsel at the closing.

The defendants did not respond in their brief to the claim that the plaintiffs are seeking the refund because the defendants breached their contract for a specific price for the building of the house. The defendants argue only that their request for the money did not violate CUTPA. The defendants characterize the payment as being for "additional expenses." The referee characterized it as "extra work," and stated that there was an escrow agreement and that the defendants' request "while precipitous and untimely, was apparently a countermove to [the] plaintiffs' own demand for credits." The referee found that there was no violation of CUTPA, "especially in light of the escrow agreement," and that the defendants paid the plaintiffs

$9500 of escrow funds held at the closing. Whether a practice is unfair and thus violates CUTPA is an issue of fact. *DeMotses* v. *Leonard Schwartz Nissan, Inc.*, 22 Conn. App. 464, 466, 578 A.2d 144 (1990). The attorney trial referee found, and the trial court agreed, that the demand for $18,600 was not unfair and not a violation of the act. We cannot disturb that finding.

On the basis of the facts found, we agree that the demand was not unlawful, did not offend public policy as established by statutes, common law or some established concept of what is fair, was not immoral, unethical, oppressive or unscrupulous, and did not cause substantial injury to consumers or competitors. See *Tarka* v. *Filipovic*, 45 Conn. App. 46, 55, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997). Even if, as the plaintiffs claim, the defendants breached a contract, such a breach is not sufficient to establish a CUTPA violation. *Retrofit Partners I, L.P.* v. *Lucas Industries, Inc.*, 47 F. Sup. 2d 256, 271 (D. Conn. 1999).

Whether there was a breach of contract is ordinarily a question of fact. *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 257, 524 A.2d 610 (1987). Here, the attorney trial referee did not expressly conclude that the contract was not breached, but concluded that the plaintiffs had other avenues of recourse if they did not want to accede to the defendants' demand and, having paid the amount, could not later attempt to reclaim it. In their motion to correct the referee's report, the plaintiffs' did not ask for specific findings that the defendants did not do extra work or did extra work with some lesser value. The plaintiffs thus waived their opportunity to seek the addition of facts in the referee's report.

The judgment is affirmed.

In this opinion the other judges concurred.