[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Gregory Ali, doing business as Ali's Landscape Garden Center, has brought suit against Morse Brothers, Inc. claiming breach of contract and unfair trade practices. Ali asserts that Morse Brothers breached an exclusive territory provision of the contract and delivered product that was substandard in quality. A claim that Morse Brothers delivered short loads of product was withdrawn by Ali at the outset of the trial. Morse Brothers denies the allegations of Ali and asserts by way of counterclaim that Ali breached the contract by failing and refusing to pay for delivered product and was unjustly enriched. Morse Brothers claims interest on the unpaid balance. Both sides seek attorneys' fees. The court heard evidence on July 18, July 19, August 15, August 16, August 27 and August 28, 2001. CT Page 11793
Late in August, 1997, the parties entered into a verbal delayed billing agreement whereby Ali was to purchase 3,650 cubic yards of bark mulch from Morse Brothers at a total cost of $60,862.50. Morse Brothers has its place of business in the State of Maine and sends its deliveries of bark mulch from that location. Since the deliveries of bark mulch were to take place in the off-season beginning in early September, 1997, there was a significant savings to Ali in the price of the bark mulch. Delivery dates were to be September through December, 1997. However, Morse Brothers reserved the option to make some deliveries early in 1998. Both parties understood that Ali intended to sell the bark mulch at retail and to landscapers at his Plantsville, Connecticut place of business beginning in April, 1998.
The first delivery of bark mulch arrived in Plantsville at the beginning of September, 1997. At the time of the second delivery, on September 4, 1997, the Morse Brothers' driver brought with him to Connecticut a written contract to supplant the verbal contract of the parties. The written contract specified that the law to be applied to the contract was the law of the State of Maine. Both parties executed the written contract. There is an addendum to the written contract calling for the signatures that Ali will designate as the only permissible signatories for acceptance of deliveries. Ali put no signatures on the addendum.
The quantity of bark mulch ordered in the 1997 contract was about 1,000 cubic yards higher than the delayed billing agreement between the same parties the previous year. Ali was willing to place a larger order because Morse Brothers agreed to sell and deliver its bark mulch to no new customers within the greater Plantsville area. Although the contract does not specify the time period for this territorial exclusion, it makes no sense to limit the time to the delivery period September, 1997, through January or February of 1998. Both parties knew that the bark mulch was intended for sale by Ali during the April to September, 1998 nursery season. Similarly, it makes no sense to extend the time period for the territorial exclusion beyond the 1998 selling season. The parties intended and contracted for Ali to have an exclusive territory for the sale of Morse Brothers bark mulch for the one-year period extending from September 1, 1997, to September 1, 1998.
Morse Brothers actually delivered bark mulch on more than seventeen occasions during September, October and November, 1997. The charge for the delivered bark mulch was $49,174.03. Ali paid a downpayment of $12,470.98 on September 4, 1997. An early snowstorm in mid-November, 1997, caused muddy conditions at the Plantsville, Connecticut nursery so that one of two Morse Brothers' delivery trucks became mired in the backyard of the nursery. Ali telephoned Morse Brothers and told Morse CT Page 11794 Brothers to cease deliveries until the ground froze. There were no further deliveries due to a mutual mistake of the parties. Morse Brothers understood that Ali was canceling further deliveries under the contract; Ali was puzzled as to why Morse Brothers had not completed the deliveries in January or February, 1998, when the ground was frozen. The telephone call from Ali requesting a delay in further deliveries was not an anticipatory breach of the contract. The failure of Morse Brothers to make additional deliveries under the delayed billing agreement was not a breach of the contract.
Ali took delivery of bark mulch from Morse Brothers on numerous occasions in the late summer and fall of 1997. There was ample opportunity for Ali to examine the delivered bark mulch. Indeed, the court finds that Ali did so, since he testified that there appeared to be nothing wrong with the bark mulch at the times of delivery. Ali accepted all of the Morse Brothers' deliveries. Ali's complaint is that the bark mulch weathered badly over the winter and was in a deteriorated state by the spring when he intended to sell it. It is common knowledge that dead organic material will begin to decompose when exposed to the elements. Ali had been in the nursery and landscaping business for several years by 1997. His claim of surprise that the product did not appear fresh in the spring of 1998, is disingenuous. The court does not find credible Ali's assertion that some of the bark mulch was mildewed as early as the spring of 1998. The court is not convinced by Ali's testimony that the delivered bark mulch was of inferior quality. The deterioration of some of the bark mulch in the spring of 1998, was caused by exposure to the elements over the preceding winter. This deterioration was as much capable of anticipation by Ali as by Morse Brothers. Ali owes Morse Brothers $36,703 for the bark mulch that was delivered and not paid for under the delayed billing contract.
The Morse Brothers' setoff and counterclaims allege that deliveries of bark mulch pursuant to the delayed billing agreement extended into April, 1998. However, the testimony of Benjamin Hawkins of Morse Brothers and the testimony of Gregory Ali were united in stating that the deliveries of bark mulch under this contract ended in November, 1997. The deliveries to Ali in April, 1998, were outside the scope of the delayed billing contract. Despite Morse Brothers' presentation of evidence that April, 1998 deliveries of bark mulch remain unpaid by Ali, those claims were not pleaded by Morse Brothers either in the setoff or the counterclaims. The court will not address claims that were not pleaded.
We now turn to the exclusive territory part of the contract. Morse Brothers' obligation under the contract was to take on no new bark mulch customers within a five-zip-code area including Plantsville and Southington, Connecticut. Morse Brothers breached that agreement when it CT Page 11795 mailed a business solicitation for the sale of bark mulch early in 1998, to Scott Comparone of Comparone Lawn Care in Southington, Connecticut (about two miles away from Ali's business) and to Guy Milo of Quality Landscaping in Plantsville, Connecticut (less than a mile from Ali's business). Comparone ordered and received one truckload of bark mulch in April, 1998; Milo ordered and received four truckloads of bark mulch in April, 1998. Each man received a "new customer" discount on these initial purchases.
In the spring of 1998, Milo had a plan in place to begin a business in competition with Ali. He would have purchased bark mulch from a source other than Morse Brothers if Morse Brothers had not been available as a supplier. In fact, Milo did make purchases of bark mulch from other vendors in the spring of 1998, both before and after the four truckloads from Morse Brothers. Although Milo had been a customer of Ali's for several years prior to 1998, he would not have continued as a customer even without the interference of Morse Brothers. Nevertheless, Milo was able to sell at retail four truckloads of bark mulch in April, 1998, that would have been bought from Ali by those same customers. The loss of profit to Ali was $3,072.
Scott Comparone was a customer of Ali prior to the spring of 1998. Invoices for the year 1997, totaling $10,187 show that Comparone did a substantial business with Ali for the purchase of most of his landscaping supplies. He bought a truckload of bark mulch directly from Morse Brothers in April, 1998, chiefly because of the solicitation he received in the mail. Ali lost profit of $995 on that load of bark mulch. When Comparone ordered a second load of bark mulch from Morse Brothers, the promised delivery was not made. Comparone then learned from Morse Brothers that any further delivery had to be brokered by Ali. Desperate for a speedy delivery, Comparone made arrangements through Ali. Ali made a profit on the second load in 1998, and will not receive a bonus on that profit now.
Comparone was upset by the down time he incurred as a result of the delay in the second delivery of bark mulch from Morse Brothers. Comparone characterized himself as a very loyal customer. Good service is vitally important to him, much more important than product cost. Although Ali's service had been excellent up to April, 1998, Comparone blamed Ali, as well as Morse Brothers, for the delayed delivery. Comparone bought no products from Ali in 1998. But for the sequence of events involving Morse Brothers in April, 1998, Comparone would have done most of his business with Ali in 1998. The gross purchases would have been comparable to the gross business with Ali in 1997, i.e. a gross of $10,187. Ali testified that his usual mark-up for product sales at his business, including bark mulch, was forty percent. The court believes that additional overhead CT Page 11796 costs associated with sales of $10,187 in products to Comparone in 1998, would have been minimal. Such costs would have been incremental at best. Neither of the parties' financial experts looked upon these sales as incremental. The court rejects the calculations of both experts as to lost profits and relies instead upon the testimony of Ali as to the mark-up for retail sales over wholesale cost of his products. A reasonable calculation of loss to Ali was 40 percent profit on the gross sales to Comparone. For the year 1998, that amount was $4,075.
"[W]here the claimed damages are not the result of a breach of contract or lease of express duration, damages for future losses are permitted as long as they are limited to a reasonable time and are supported by the evidence." (Citation omitted. Internal quotation marks omitted.) BeverlyHills Concepts, Inc. v. Schatz, 247 Conn. 48, 76, 717 A.2d 724 (1998). "Lost profits must be proved by a reasonable certainty and limited to a reasonable period of time." Beverly Hills Concepts, Inc. v. Schatz, supra, 89. Comparone did not operate a landscaping business in the years 1999, and 2000. He resumed a landscaping business in Southington, Connecticut in the year 2001. Ali's expert witness on future losses, a certified public accountant, was not qualified to testify as to business valuation. Her assumption that Comparone would continue in business for seven more years beyond 1998 in the same location and would remain a loyal customer of Ali during all of that time, but for the circumstances of this case, was not based upon any particular expertise in or knowledge of the landscaping business. It was not based upon expertise in evaluating business practices for persons in the socioeconomic strata of Comparone. Based upon the evidence presented at trial the court is unable to predict future losses to Ali from the loss of Comparone's custom beyond the year 1998. Such a prediction would be speculative and conjectural. In any case, when Ali commenced this lawsuit in the late summer of 1998, his complaint did not contain a claim for loss of future profits from the expected lack of Comparone's patronage in future years. Just as this court would not address unpleaded claims by Morse Brothers, so also the unpleaded claims of Ali will not be entertained.
Neither party comes to this court with clean hands. Both have breached the contract. The breach by Morse Brothers was the first in time because of its solicitation and sales of bark mulch to new customers in the excluded territory early in 1998. Nevertheless, Ali's failure to pay for the bark mulch actually delivered to' him was not excused. This court will not award a purely contractual remedy to a party that has breached the contract. Neither party is awarded interest at the rate of eighteen percent nor attorneys' fees in this matter pursuant to the contract.
Ali has acknowledged that his refusal to pay for the bark mulch was because of the allegedly inferior product, not because of the exclusive CT Page 11797 territory breach. This court has found that the product was not inferior. As of May 15, 1998, Ali wrongfully detained $36,703 from Morse Brothers. Ali was unjustly enriched by the detention of the bark mulch and the conversion of that product to his benefit by sales of it. By the terms of General Statutes § 37-3a interest at the rate of ten percent per annum may be recovered as damages for the wrongful detention of money damages after they become payable. Prejudgment interest, as an element of damages, may be awarded by the trial court when equitable considerations deem that it is warranted. See Nor'easter Group, Inc. v. ColassaleConcrete, Inc., 207 Conn. 468, 482, 542 A.2d 692 (1988); Paulus v.LaSala, 56 Conn. App. 139, 147, 742 A.2d 379 (1999), cert. denied,252 Conn. 928, 746 A.2d 789 (2000). On the $36,703 owed by Ali since May 15, 1998, the simple interest calculated at ten percent to today's date is $11,790.
Judgment shall enter for the plaintiff Ali on the defendant Morse Brothers' breach of contract in the amount of $8,142. Ali has not sustained its burden of proof as to the unfair practices claim against Morse Brothers. As to counts first and second of the plaintiff's complaint, judgment shall enter for the defendant. As to count third of the plaintiff's complaint, judgment shall enter for the plaintiff. Judgment shall enter for the defendant Morse Brothers on its counterclaim for breach of contract and unjust enrichment in the amount of $36,703 plus interest to today's date in the amount of $11,790 for a total of $48,763. As to counts first and second of the defendant's counterclaim, judgment shall enter for the defendant. As to counts third and fourth of the defendant's counterclaim, judgment shall enter for the plaintiff. The effect is a net of $40,621 to the defendant Morse Brothers. The defendant is entitled to costs.
Winslow, J.