[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This litigation resulted from a casualty loss on or about January 19, 1996 to certain premises owned by the plaintiff. The loss occurred as the result of an accumulation of ice and snow on the roof of the building. The complaint alleges that the defendant has failed or refused to compensate the plaintiff fairly and adequately under the terms of the coverage; that the carrier has refused and neglected to submit the controversy to appraisal arbitrators; and that the carrier's actions constitute bad faith and an unfair trade practice. The case was ultimately settled and withdrawn upon the payment of eighty-eight thousand five hundred ($88,500) dollars on or about November 19, 2001. However, on or about July 18 of this year, prior to the withdrawal, the plaintiff filed a motion for interpleader occasioned by the claim of Nutmeg Adjusters, Inc., a public adjustment firm, which claimed an interest in the proceeds arising out of claimed services rendered under a public adjuster employment contract dated July 25, 1996.[1] Upon the plaintiff's motion for interpleader, the issue became the entitlement, if any, of Nutmeg to a share of the settlement proceeds.
The contract provided for the payment of a fee to Nutmeg "based on ten (10%) percent over Proof of Loss amount submitted by Commercial Union Insurance Company to date." That figure was set down at thirty-five CT Page 16491 thousand five hundred fifty-nine dollars and seventy cents ($35,559.70). The agreement also provided that "this contract cannot be terminated in favor of another Public Adjuster." The second page of said contract sets forth what the legal rights of the plaintiff thereunder were.
Perhaps the most significant of those legal rights was: "CANCELLATION: You may cancel this contract by notifying us at the address shown on the other side of this page, in writing, by certified mail, return receipt, postmarked not later than midnight two (2) days following the day this contract is signed. If the contract is signed on a Friday, Saturday or Sunday, you will have until midnight on the following Tuesday to mail the notice of cancellation to us as described above." This provision is at the heart of the controversy. Perhaps "rescission" is a more accurate word than "cancellation." The document goes on to say that "[t]his form is in compliance with Section 38-72(h)-6 of the Regulations of the Connecticut Insurance Department." Additional plaintiff's rights under the contract were: "SETTLEMENT OFFER: We shall forward to you any written settlement offer from the insurance company." (Emphasis supplied.)[2]
On April 8, 1997, the principals of Malis, Inc. expressed dissatisfaction and frustration with Nutmeg. It was their claim that they had received no settlement offers during that approximate nine month period and in counsel's letter to Nutmeg, they attempted to terminate the contract.[3] The notice of discharge, dated April 8, 1997, has been acknowledged by Nutmeg counsel's letter of April 22, 1997. That acknowledgment indicates that Nutmeg would take no further steps to represent Malis, Inc. in that particular proceeding. It did, however, continue to assert its right to ten (10) percent of the funds ultimately received by Malis and claimed to have done a great deal of work in the matter. One Richard Ouelette, Nutmeg's vice president, confirmed in his testimony that no offer was indeed submitted, although estimates and suggestions were indicated by Nutmeg to the principals of Malis.
Nutmeg postulates that its termination was ineffective as it was violative of the cancellation provisions of the contract. It asserts that the only possible cancellation of this contract is governed by the cancellation provisions therein and unless exercised in accordance with the time standards set therein, the plaintiff remains obligated to pay them in accordance with the payment terms of the contract. It continues by accusing Malis of breaching the contract in its attempt to discharge Nutmeg after it had substantially performed.
Whether Malis' action in the termination of Nutmeg's services was a breach of contract under a given set of circumstances, is a question of fact to be resolved by the court. See Paulus v. LaSala, 56 Conn. App. 139,153 (1999); citing therein Bowman v. 1477 Central Avenue Apartments,CT Page 16492Inc., 203 Conn. 246, 257 (1987). Nutmeg also relies on the assignment language appearing in the employment contract. They assert that an assignment is irrevocable when coupled with an interest. The interest claimed herein is the consideration provided for in the contract in the form of services rendered in anticipation of payment.
Nutmeg's argument that the contract is incapable of revocation after the expiration of the two day period following execution, as set forth in the cancellation provision thereof, is not persuasive. Similar notice provisions are found in the Home Solicitation Sales Act and Home Improvement Contractors Act statutory rubrics. They are often referred to as protection for homeowners or occupiers from those who very forcefully and aggressively convince homeowners and occupiers, those seeking the services of such providers, who simply change their minds, have second thoughts, or fear that they have been duped. To suggest that such contracts as this with this cancellation clause cannot be terminated after the expiration of the time provided in such clause borders on lunacy. In fact, Plaintiff's Exhibit 13, acknowledging receipt of the letter of discharge, recognizes such a right to terminate with the language they (clients) will take no further steps to represent Malis, Inc. in this matter. It does, however, reiterate the existence of its claim for a fee over and above the thirty-five thousand five hundred fifty-nine dollars and seventy cents ($35,559.70) recovered by Malis.
Malis asserts that the contract at issue is an adhesion contract which is defined as a contract in which one contracting party has no occasion to bargain about the consequence of cancellation. Its position is that the contract should be declared void. It cites to Aetna Casualty SuretyCo. v. Murphy, 206 Conn. 409 (1988), which describes, analyzes and rules upon the impact of a so-called adhesion contract. In that discussion, the court seems to balance the strangulation aspect with the prejudice to the strangler. However, the court does not find this contract to be an adhesion contract.
The court finds that the plaintiff revoked and repudiated the contract in accordance with their attorney's letter of April 8, 1997.[4] That revocation terminated any further services being provided by Nutmeg. However, it did not terminate the assignment aspects of the contract. The previously discussed language of that assignment, when coupled with an interest in this case, is the consideration provided for the contract to establish the irrevocability of the assignment. The authority for that proposition is recognized in Biller Associates v. Peterken, 58 Conn. App. 8,18-19 (2000); Kubeck v. Cossette, Superior Court, judicial district of New Britain at New Britain, Docket No. 478533 (August 18, 2000,Shortall, J.), 2000 Ct. Sup. 9974, 9981. It thus becomes clear that Nutmeg can prevail in its claim for compensation under the assignment. CT Page 16493
However, the moneys due Nutmeg are not determined by applying ten (10%) percent to eighty-eight thousand five hundred ($88,500) dollars allocated in the release between Malis and Commercial Union in the settlement of the property damage claim.[5] The contract provides for ten (10%) percent to be determined from the net ACV above thirty-five thousand five hundred fifty-nine dollars and seventy cents ($35,559.70). On January 6, 1997, it appears that Nutmeg had submitted the figure of seventy-eight thousand five hundred seventy-three dollars and eighty-eight cents ($78,573.88) to the plaintiff. Disregarding the clouds created by semantics, this "replacement cost figure" apparently produced by Nutmeg is a measure of the services rendered and provides a second parameter for the sum against which the percentage is to be applied.[6] The difference between the excluded amount of thirty-five thousand five hundred fifty-nine dollars and seventy cents ($35,559.70) and seventy-eight thousand five hundred seventy-three dollars and eighty-eight cents ($78,573.88) is forty-three thousand fourteen dollars and eighteen cents ($43,014.18). Applying the percentage ten (10%) percent thereto, the court finds the amount due to Nutmeg Adjusters, Inc. to be four thousand three hundred one dollars and forty-two cents ($4,301.42).
Judgment may enter that Nutmeg Adjusters, Inc. recover the sum of four thousand three hundred one dollars and forty-two cents ($4,301.42), from the settlement proceeds, together with costs of suit.
Moraghan, J.T.R.
Plaintiff's Exhibit 1
 NUTMEG ADJUSTERS INC. ADJUSTERS OF FIRE LOSSES FOR THE INSURED 110 CHAPEL STREET BRIDGEPORT, CONN. 06604 TELEPHONE 367-7766 1-800-348-FIRE FAX 367-9216
John J. Cotter, Jr.
 READ BOTH SIDES BEFORE SIGNING PUBLIC ADJUSTER EMPLOYMENT CONTRACT
To the Interested Insurance Companies and Others whom It May Concern:
I/we retain The Nutmeg Adjusters Inc. to act as my/our public adjuster and to advise and assist in the adjustment and settlement of my/our ____________________________Collapse_________________ loss at CT Page 16494 (TYPE) ____________71 Rose Street, Danbury, Connecticut___________________
which occured on or about ___January 1996___. In consideration for these services, I/we hereby assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to 10%* percent of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered.
This contract cannot be terminated in favor of another Public Adjuster.
I HAVE READ THE INFORMATION ON BOTH SIDES OF THIS CONTRACT.
___July 25, 1996___ Signed: XX_____________________ (date) (Signature of Insured)
 _________________________________ (Signature or Insured)
 _________________________________ (Address)
 _________________________________ (City and State)
Agreed to: NUTMEG ADJUSTERS INC.
 _________________________________ (signature of Public Adjuster)
This form is in compliance with Section 38-72(h)-6of the Regulations of the Connecticut Insurance Department. This form must be signed by the licensed Public Adjuster and by Insured.
 INFORMATION ABOUT YOUR PUBLIC ADJUSTMENT EMPLOYMENT CONTRACT
YOUR LEGAL RIGHTS:
CANCELLATION: You may cancel this contract by notifying us at the address shown on the other side of this page, in writing, by certified mail, return receipt, postmarked not later than midnight two (2) days following the day this contract is signed. If the contract is signed on a Friday, Saturday or Sunday, you will have until midnight on the following Tuesday to mail the notice of cancellation to us as described above. CT Page 16495
SETTLEMENT OFFER: We shall forward to you any written settlement offer from the insurance company.
FEES: Our services are available for a fee to be paid by you. We cannot charge you a fee greater than ten percent (10%) of the actual or final settlement of the loss covered by this contract nor can we rebate any part of the fee specified in this Employment Contract.
COPY OF THE CONTRACT: We must give you a true copy of this Employment Contract at the time you sign it.
LIMITATIONS OF PUBLIC ADJUSTERS:
We are not allowed:
— to solicit your employment between 8:00 p.m. and 8:00 a.m.
 — to solicit your employment if you have already hired or contracted with another public adjuster.
 — to have any interest whatsoever in any construction, salvage, or appraisal business.
— to represent both an insurer and an insured at the same time.
 — to pay anything of value to any person as an inducement to refer business to us.
— to share our fee, except with another licensed Public Adjuster.
— to advise you on any question of Law.
 — to advance any monies to you before settlement of the loss, where such amount would be included in the final settlement.
 — to make false statements about an insurance company or its representatives.
We must:
— sign this Contract.
 — inform you that we do not represent any insurance company or any insurance company adjusting firm.