[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried by an attorney trial referee, involves a dispute between business associates operating a gas station and convenience store in Wilton. The plaintiff is Steven C. Chila, who filed a one count complaint alleging that he and the defendants, Richard L. Stuart and his brother, Robert L. Stuart, entered into a written contract dated October 2, 1997, pursuant to which he and the defendants formed a corporation, Wilton Auto Service Center, Inc. (Wilton Auto). The plaintiff further alleged that under this agreement he was promised $53,000 as a consulting fee for the first six months of operation, which fee the individual defendants personally guaranteed and which remained unpaid.
The defendants denied the material allegations of the complaint, and they also filed four special defenses and a counterclaim. The first defense alleges that the plaintiff misrepresented the degree of his involvement in the new business and is therefore estopped from collecting any money for consulting services. In their second special defense, the defendants claim that the agreement they entered into with the plaintiff is unconscionable. The defendants claim in their third special defense that the agreement with the plaintiff was illusory and without consideration, and in their fourth defense, the defendants allege that they have already paid the plaintiff his consulting fees.
The counterclaim is in eight counts. In the first count, the defendants claim that the agreement with the plaintiff required that he use his best efforts to help Wilton Auto succeed, but that the plaintiff failed to comply with this provision, and rather acted in a way to harm the business, including diverting the defendants' customers to the plaintiff's own gas and service station in Darien, and refusing to return the $173,000 the defendants gave him to start the business. In the second count of the counterclaim, the defendants allege that because of his superior knowledge of the gas station business, the plaintiff occupied a fiduciary position with them but had breached his fiduciary duties. In CT Page 11360 the third count, the defendants claim that the plaintiff made false representations about using his best efforts to help the new business, upon which representations they relied. According to the fourth count, the plaintiff breached his implied obligation of acting in good faith and fair dealing.[1]
In the fifth count, it is alleged that the plaintiff violated General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA).[2] The defendants allege in the sixth count of their counterclaim that the plaintiff intentionally interfered with customers of Wilton Auto. In the seventh count, it is claimed that the plaintiff diverted customers and money belonging to Wilton Auto to his own personal use. In the eighth count, the defendants allege that the plaintiff converted to his own use money, inventory or equipment that belonged to the defendants.
The plaintiff denied the material allegations of the counterclaim and filed special defenses that the defendants negligently failed to use their best efforts to make the new business work. The plaintiff further contends in his special defenses that the defendants had counsel of their own choosing, and that CUTPA did not apply to a consumer transaction.
The case was referred to an attorney trial referee, Kenneth B. Povodator, Esquire, as authorized by General Statutes § 52-434 (a)(4) and Practice Book § 19-2A. The attorney trial referee conducted a trial and then submitted a report to the court containing his factual findings, conclusions and recommendations as required by Practice Book § 19-8. The referee made the following factual findings: (I) on October 2, 1997, the defendants signed an agreement with the plaintiff at the office of the plaintiff's attorney who made clear in writing, acknowledged by the defendants, that she was representing only the plaintiff and not the defendants; (2) prior to the closing, the defendants had not seen either the agreement with the plaintiff or various other documents involving either the franchisor, Standard Oil, or the leases for the subject premises; (3) the agreement with the defendants provided that the plaintiff would be paid $53,000 for "consulting services," and that the plaintiff would be president of the new corporation with a 22% interest therein, but without sharing in the profits; (4) the plaintiff was experienced in the operation of automobile service and repair facilities, and the defendants were not and needed guidance to learn the business; (5) the plaintiff did not use his "best efforts" in providing consulting services to the defendant in that (i) he was at the station only "on a very limited number of occasions," (ii) he primarily contacted the defendants only by telephone and would drive by the station "on occasion," (iii) he did not make any "special effort" to assist the CT Page 11361 defendants in starting this new business which soon failed, and (iv) the plaintiff took a vacation during the month or so when the business was first in operation and struggling; (6) the plaintiff diverted some of the defendants' customers to his own auto repair and service station in Darien, especially when the defendants lacked qualified repairmen at their own place, but he failed to account to the defendants for any profits on such repairs that the plaintiff made at his own service station; (7) the plaintiff received $9,000 from the defendants to purchase tools belonging to the prior owner, made a side deal with that owner to buy such tools for $8,000, but then stopped payment on his own check so that the defendants lost the $9,000, but never obtained ownership of these tools; (8) the plaintiff's conduct constituted a violation of CUTPA; and (9) in terms of money, the defendants paid the plaintiff a total of $173,000,[3] including $150,000 which was earmarked for start up costs.[4]
Based on these findings of fact, the attorney trial referee concluded that: (1) the plaintiff breached both his contract with the defendant and also the covenant of good faith and fair dealing by not providing his "best efforts" to make the new business successful, and hence was not entitled to recover $53,000 from the defendants for consulting services as sought in his complaint; (2) by not providing his best efforts as a consultant for the defendants, the most essential provision of the contract was breached by the plaintiff, and therefore recission of the contract was "an appropriate remedy;" (3) the defendants failed to prove those allegations of the complaint which alleged that the contract with the plaintiff was "unconscionable" or "illusory;" that the plaintiff had any "fiduciary" obligations to them; that the plaintiff had acted "fraudulently" or had "tortiously interfered" with the defendants' business; and that the plaintiff had "converted" any money belonging to them; and (4) based on the "equities," the defendants were not entitled to prejudgment interest, punitive damages or attorney's fees under CUTPA. The referee recommended that judgment enter in favor of the defendants as to the plaintiff's complaint. He further recommended that judgment enter in favor of the defendants with regard to their counterclaim for $173,000, the amount that the defendants had paid the plaintiff, on either a theory of recission of the contract or damages for breach of the contract.
The defendants did not object to the attorney trial referee's report and recommendations but, as authorized by Practice Book § 19-14,[5]
the plaintiff filed objections dated December 26, 2001, which, for the most part, attack numerous factual findings of the referee as being "against the great weight of the evidence," an assertion which will be discussed later. The other objections by the plaintiff can be summarized CT Page 11362 as follows: (1) the attorney trial referee should have recused himself on conflict of interest grounds because an attorney in the law firm that represented the defendants also worked, as does the referee, for the city of Stamford; (2) recission was not a proper method to calculate damages and the recommendation that the defendants recover $173,000 is contrary to the provision in the agreement that the moneys paid to the plaintiff were non-refundable; (3) the attorney trial referee agreed that there were no fraudulent misrepresentations on the part of the plaintiff, and thus the referee should not have found that the plaintiff violated CUTPA; (4) an affidavit by the plaintiff dated December 26, 2001, submitted after the trial by the referee was over, indicated that the plaintiff took a vacation in November, 1997, not in October of that year when the business was just starting; (5) an affidavit by the plaintiff's attorney, also dated December 26, 2001, indicated that she had been advised that the defendants had consulted their own counsel, were not working normal business hours and were "not operating the business properly;" and (6) the referee improperly admitted into evidence a copy of a cashier's check purporting to show that the defendants had paid $9,000 to the plaintiff to purchase tools from the former owner of the gas station.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456 (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id.
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the CT Page 11363 reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). A fact finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
In terms of the objections filed by the plaintiff, it is evident that the underlying issue in this case is why the new business failed. The plaintiff claims it was because the defendants failed to exert enough effort and spend sufficient time on the job. The defendants claim and the attorney trial referee found that the real reason was that the plaintiff, contrary to his agreement, failed to provide his "best efforts" as a consultant and left the defendants floundering on their own.
The first question is whether there was sufficient evidence and testimony on which the attorney trial referee could base his factual conclusion that the plaintiff failed to live up to his agreement as a consultant to the defendants with respect to their new business. The transcript of the trial indicates that there is indeed sufficient evidence to justify the findings of the attorney trial referee to that effect.[6] Moreover, "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact." Presidential Capital Corp. v Reale, 231 Conn. 500, 507,652 A.2d 489 (1994). The findings of fact in a contract action, such as this case, "should be overturned only when they are clearly erroneous."Wilcox Trucking, Inc. v. Mansour Builders, Inc., supra, 20 Conn. App. 425. It is well recognized, furthermore, that whether a contract has been breached is an issue of fact for the trier of fact. Bowman v. 1477Central Avenue Apartments, Inc., 203 Conn. 246, 257, 524 A.2d 610
(1987).
It is quite evident that the attorney trial referee chose to believe the testimony offered by the defendants and not the testimony on behalf of the plaintiff regarding the reason for the failure of the business. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v.Goepfert, 28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
It is true that the attorney trial referee heard contrary testimony from the plaintiff regarding his efforts in rendering consulting services CT Page 11364 and concerning the conduct of the defendants in operating the business, but the referee obviously relied on the testimony of the defendants and their witnesses. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder." Nor'easter Group, Inc. v. Colossale Concrete, Inc.,207 Conn. 468, 473, 542 A.2d 692 (1988). "[C]redibility is a matter for the trier of fact to determine. In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) State v. Nelson, 67 Conn. App. 168, 179, 786 A.2d 1171 (2001).
The next issue concerns the various objections by the plaintiff that were outlined previously. The first such objection concerns recusal of the attorney trial referee because of an alleged conflict of interest. In the first instance, this claim does not comply in any way with Practice Book § 1-23, which provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."
Secondly, even if there had been compliance with Practice Book §1-23 or even if this provision does not apply to attorney trial referees, there is no merit to this objection by the plaintiff because there is no conflict of interest on the part of the attorney trial referee. He is an assistant corporation counsel of the city of Stamford (city) and his supervisor is the corporation counsel. Attorney Cassone, who is a partner in the law firm that represents the defendants in this present action, had formerly been the corporation counsel for the city. However, at least two years prior to the commencement of this action, he left that position and is currently in charge of public health, safety and welfare for the city, and has nothing to do with the corporation counsel's office. Attorney Cassone, in other words, was not the supervisor of the attorney trial referee when this action began or when Attorney Povodator rendered his decision on August 13, 2001. Moreover, the attorney trial referee explained his relationship with Attorney Cassone in detail and then asked counsel if there were any "questions or concerns about his suitability to hear the matter." Counsel for the plaintiff replied in the negative. Thus, this objection is overruled. CT Page 11365
The second objection revolves around the recommendation of rescission of the contract and the award of $173,000 to the defendants, which sum represents the total amount of money they paid to the plaintiff. The court agrees with the plaintiff that the alternative of rescission mentioned by the attorney trial referee is not applicable. "Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as possible. . . . The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides and hence the general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in status quo." (Citation omitted; internal quotation marks omitted.) Metcalfe v. Talarski, 213 Conn. 145, 153, 567 A.2d 1148
(1989).
Moreover, rescission of a contract appears to be appropriate "if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract." Paul Revere Life InsuranceCo. v. Pastena, 52 Conn. App. 318, 325, 725 A.2d 996, cert. denied,248 Conn. 917, 734 A.2d 567 (1999). In addition to fraud, the attorney trial referee suggested the actual absence of consent, or mutual mistake as further possible grounds for the rescission of a contract. See Gearyv. Wentworth Laboratories, Inc., 60 Conn. App. 622, 627, 760 A.2d 969
(2000). In the Law of Contracts, Calamari and Perillo, 4th ed., § 9.26 at p. 348, the authors say "Mutual mistake can render a transaction voidable. Where both parties share a common assumption about a vital existing fact on which they based their bargain and that assumption is false, the transaction can be avoided under certain circumstances." The attorney trial referee found that there were no material misrepresentations which caused the parties to enter into this contract, or fraud or mutual mistake. In this particular case, however, the issue of whether rescission is an appropriate remedy is not important because the referee also recommended that the defendants recover the same amount, $173,000, on a breach of contract theory.
This in turn brings up the proper measure of damages in a breach of contract case. The parties had a contract but the plaintiff breached it by failing to exert his "best efforts" as a consultant. Pursuant to this agreement, the defendants paid the plaintiff $173,000 and the referee recommends that the total amount be returned to the defendants. The measure of damages for breach of contract is that the award should "place CT Page 11366 the injured party in the same position as he would have been in had the contract been performed." Gazo v. City of Stamford, 255 Conn. 245, 265,765 A.2d 505 (2001). "[C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." (Internal quotation marks omitted.)Colby v. Burnham, 31 Conn. App. 707, 721, 627 A.2d 457 (1993); see alsoFrederick Raff Co. v. Murphy, 110 Conn. 234, 242, 147 A. 709 (1929). "Such damages, moreover, are to be determined at the time of the breach."Colby v. Burnham, supra, 721. (Internal quotation marks omitted.) Keefev. Norwalk Cove Marina, Inc., 57 Conn. App. 601, 610, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).
Furthermore, "the assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages." Buckman v. People Express, Inc., 205 Conn. 166, 174-75,530 A.2d 596 (1987). "In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) L.F. Pace Sons, Inc. v.Travelers Indemnity Co., 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). The recommendation that the plaintiff return the $173,000 that he received from the defendants because he breached his contract with the defendants, and thus caused the downfall of the new business, is not illegal or illogical. The reference in the agreement that the $150,000 obtained from the defendants was not refundable is not operative because of the finding by the attorney trial referee that the plaintiff breached the contract and thereby damaged the defendants. The damages recommended by the referee do not constitute a refund as such but damages that flow naturally from the breach.
The next issue involves the conclusion by the attorney trial referee that the plaintiff had violated CUTPA. Although ordinarily whether a practice is unfair and violates CUTPA is an issue of fact; Paulus v.Lasala, 56 Conn. App. 139, 153, 742 A.2d 379, cert. denied, 252 Conn. 928,746 A.2d 788 (2000); the attorney trial referee did not recommend the award of any damages as a result of the violation and therefore this objection is moot. So is the objection by the plaintiff that the defendants did not prove the allegations of their counterclaim that the plaintiff had breached his obligation of good faith and fair dealing, CT Page 11367 because the attorney trial referee did not recommend any specific recovery for this breach, but only damages for breach of contract.
The subject of the two affidavits submitted by the plaintiff after the trial was over was the subject of a motion to strike (#134), which appeared on the short calendar of May 20, 2002, the last time this case was on a calendar. The trial by the attorney trial referee was finished by February, 2001, and these two affidavits, one by the plaintiff himself, and the other by his attorney, were submitted about ten months later. The plaintiff attempted to clarify the time when he took his vacation, which obviously could have been done during the trial when he was testifying. The plaintiff's counsel attempted to interject information concerning both her representation of only the plaintiff at the closing, and not the defendants, as well as the conduct of the defendants in operating their gas station. Again, this affiant could have been called as a witness if she had any relevant information concerning this present case. Once the trial was over, any new evidence or witnesses could be presented only if a motion to open the trial for newly discovered evidence was granted. This procedure was not followed as the plaintiff simply attached the two affidavits to his post-trial brief. Therefore, the defendants' motion to strike these two affidavits is granted.
There was an evidentiary objection by the plaintiff relating to the introduction into evidence of copies of the front and back sides of a cashier's check on Fleet payable by the defendants' uncle to Steven Chila in the amount of $9,000. The defendants testified that they gave this check to the plaintiff to pay for tools belonging to the former owner of the gas station and convenience store they were purchasing. The plaintiff's objection is that there was no foundation that the plaintiff had actually cashed the check, although the reverse side of the check indicates that it was deposited or redeposited, and as indicated, it was made payable to the plaintiff. The only question is whether the attorney trial referee's admission of this document was an abuse of discretion. See State v. Sierra, 213 Conn. 422, 434-35, 568 A.2d 448 (1990). The plaintiff's objections go only to the weight of the evidence but it was well within the discretion of the attorney trial referee to admit this document into evidence.
The attorney trial referee, on the basis of the facts that he found, was justified, both legally and logically, in concluding that the plaintiff had breached his contract and that the defendants were entitled to damages. The defendants gave $173,000 to the plaintiff and the business failed because, according to the attorney trial referee, the plaintiff breached his contractual obligation to "use his best efforts CT Page 11368 during the consulting period to help the business succeed . . . [and] not do anything during the initial three year lease term of the gas station or convenience store which would harm the business." For the foregoing reasons, the report of the attorney trial referee is accepted and judgment in the amount of $173,000 may enter against the plaintiff and in favor of the defendants. Prejudgment interest pursuant to General Statutes § 37-3a was not recommended by the attorney trial referee and is not awarded. Costs are to be taxed in favor of the defendants by the clerk of this court in accordance with General Statutes § 52-25
and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 5th day of September, 2002.
William B. Lewis, Judge T.R.